**UNITED STATES of America, Appellee,**

v.

**Paul L. PRIONAS, Appellant.**

**No. 20288.**

United States Court of Appeals, Eighth Circuit.

March 3, 1971.

Rehearing Denied March 29, 1971.

Certiorari Denied May 17, 1971. See 91 S.Ct. 1683.

Bruce S. Feldacker, St. Louis, Mo., for appellant.

Daniel Bartlett, Jr., U. S. Atty., Peter T. Straub, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

HANSON, District Judge.

Defendant Paul Prionas, appellant herein, was convicted by a jury on nine counts of an indictment charging mail fraud and seven counts of using an assumed name in connection with the mail fraud scheme. 18 U.S.C.A., Section 1341; 18 U.S.C.A., Section 1342. He was sentenced to a total of eight years imprisonment.

Defendant presents four issues to be considered on appeal: (1) the insufficiency of the evidence; (2) the inadmissibility of certain exhibits; (3) the improper cross-examination of defendant; and (4) the propriety of the trial court's reserving ruling on a motion for judgment of acquittal at the close of the Government's case. We reject each of defendant's grounds for reversal and affirm. We will consider the issues raised seriatim.

I. SUFFICIENCY OF THE EVIDENCE

The essence of the indictment was that defendant devised a scheme involving two schools, the Doncaster School and the Brookshire School, whereby he acquired merchandise which he had no intention of ever paying for. Counts 1 and 3 alleged violations of 18 U.S.C., Section 1341 in the operation of the Doncaster School. Counts 7, 8, 11, 12, 13, 14 and 15

alleged violations of 18 U.S.C., Section 1341 in the operation of the Brookshire School. Counts 16, 17, 20, 21, 22, 23 and 24 alleged violations of 18 U.S.C., Section 1342 in connection with defendant's use of the name Lawrence Van Rick in the operation of the Brookshire School. The other eight counts of the indictment were dismissed by the Government at trial.

The Government's evidence established the following facts: In early 1966, Prionas began ordering merchandise through the mails from various companies by the use of printed purchase orders bearing the name of the Doncaster School. Specifically, on February 3, 1966, defendant ordered a $136 pegboard divider from the Brewster Corporation on behalf of the Doncaster School which order was signed by Paul Prionas. This item was shipped collect but no payment was ever received. On October 9, 1967 the Brewster Corporation received a letter from Prionas stating that the equipment was being used but that "due to circumstances beyond our control, we are not able to meet all our financial obligations, and are doing our best to avoid filing bankruptcy." The letter further stated that Prionas was willing to return the equipment or make partial monthly payments.

A representative from Olson Electronics testified that their firm had also received a purchase order from Doncaster School by Paul Prionas. The merchandise was shipped but no payment was received. In response to a collection letter, Olson received on September 20, 1967, a letter identical to that received by Brewster Corporation in respect to why no payment had been forthcoming. Before that date, however, Olson had sent its local St. Louis representative, Mr. Charles DeLuca, to the Doncaster School Location in an attempt to regain the merchandise.

Mr. DeLuca testified that upon notification by Olson Electronics, he went to the Doncaster School address in St. Louis. DeLuca found a junk shop at the purported address but upon inquiry located the Doncaster School two doors down. There was a sign indicating the Doncaster School. DeLuca talked to Prionas and requested payment or return of the merchandise. At that time Prionas stated that he did not have the merchandise and wanted to talk to his attorney. A week later Prionas told DeLuca he had seen his lawyer and would make payment in thirty days. In November 1967 DeLuca was requested by Olson to check the status of the Prionas situation. DeLuca went back to the Doncaster School approximately three times but was unsuccessful in getting any answer to his knocks on the door. Olson was never paid for the merchandise.

Postal Inspector Britz testified that he had received complaints from Olson Electronics and other companies about the Doncaster School. Britz began an investigation of the matter and spoke to defendant. Prionas admitted receiving the merchandise and not paying for it. Prionas told Britz that he would return some of the merchandise but that he had already sold some of the items. Britz described the Doncaster School as a second-story three-room apartment composed of a kitchen, a living room and sleeping quarters. It was furnished with a kitchen table, a range, a few chairs, sofa and bed. The only equipment Britz saw was a projector. It should be noted that Britz met with Prionas three times and the proper constitutional warnings were observed.

The evidence also established that in 1969 defendant established a second school, the Brookshire School, and again began ordering merchandise from various companies. The merchandise was ordered by Prionas under an assumed name, Lawrence Van Rick. The companies shipping the merchandise never received payment. These purchases were concentrated in no more than a three-month period in 1969.

Postal Inspector Schicker testified that he first had contact with the defendant in June 1968 when Postal Inspector Britz was investigating the Doncaster School. Schicker's participation in that investi-

gation was limited to witnessing the *Miranda* warnings given to defendant.

Schicker again saw defendant on July 3, 1969 at the Brookshire School. He was investigating complaints against the school for failure to pay for merchandise. Schicker did not remember Prionas' name but remembered his face. Prionas first stated his name as Lawrence Van Rick but when Schicker disputed this, defendant told him his real name. Schicker advised defendant of his constitutional rights. Defendant stated he owned the Brookshire School. Inspector Schicker made some notes of several pieces of equipment in sight which included an amplifier, tape deck, two speakers and a projector. Schicker described the Brookshire School as a one-room affair with a cot in the corner, several lights and one chair. On July 7, 1969, defendant met with Schicker at which time a statement was taken from defendant.

In the statement given to the postal inspector, Prionas stated that on that day he was returning all the merchandise through American Express Company. He also stated that he would give Schicker the shipment receipt when the merchandise was returned. Defendant did not give Schicker any receipt nor was any merchandise ever returned. Between July 7, 1969, and September 15, 1969, Schicker unsuccessfully attempted to locate defendant at the Brookshire School address. However, Schicker did not attempt to locate defendant at the address and telephone given in the statement which was his parent's address and number.

Schicker next saw defendant on September 15, 1969, and again interviewed him concerning both the Doncaster and Brookshire Schools. Defendant gave Schicker permission to search his apartment. A quantity of merchandise in the nature of stereo, photographic and electronic equipment was found.

Defendant's evidence is as follows: Oliver Matthews, who gave his occupation as a sculptor, testified that in 1967 he was a student in the Doncaster School. He stated that the Doncaster School was a "real big apartment" with a lot of good new equipment of the kind that was used in sculptoring. Matthews further stated that he saw other people at the school who came and went and that there were no set classes. He also stated that he saw defendant helping others in their art work, that he never paid any money to defendant and that he didn't know whether the other students paid anything.

Miss Linda Gould testified that she did art work and was familiar with the Brookshire School. She first heard of the school from friends. She stated that she was a student of the Brookshire School in May and June of 1969 and that defendant instructed her in the art of sculptoring. She attended approximately eight times. She saw no other students but assumed there were other students because of the other works of art in progress. She stated that she was charged $6.00 a lesson.

The defendant took the stand in his own behalf. He stated that he started the Doncaster School in 1966 to teach sculpture in the Gaslight Square area of St. Louis. He described the Gaslight Square as an arty-minded neighborhood and himself as a self-educated sculptor. Defendant testified that he used the purchase orders as a financing method since he couldn't raise any money for the school. He stated that in the customary 30–60–90 day credit periods, he had expected income from the school to pay for the merchandise so ordered. Defendant testified that the incorrectness of the address for the Doncaster School on the purchase orders resulted from a printer's error. He also stated that at the time he placed the orders for Doncaster School he had intended to pay for the goods but because of the school's lack of success in attracting paying students, had sold some of the merchandise for rent and food. He further testified that he stopped the Doncaster School in the fall of 1967 after the inquiry by the postal authorities. His avowed reason for not returning the merchandise was a lack of funds for shipping costs.

Defendant further testified that he eventually left St. Louis and went to California for a couple of months returning to St. Louis in December 1968. He then started the Brookshire School in May 1969. It was closed in July 1969 after defendant was again investigated by the postal authorities. The avowed purpose of the Brookshire School was to teach sculpture. Before the school was closed, defendant stated that he had sold some of the merchandise but that he had intended to pay for it when he ordered it. He again stated that he hadn't returned the goods because of prohibitive shipping costs.

Defendant explained the reason for ordering each piece of equipment, namely, a pegboard divider, ashtrays, overhead projector, arrows, staking tools, psychedelic auto sound light, box of bulbs, lenses, portable car cooler, transformer, crash helmet, portable electric refrigerator, station wagon pad, full width flaps, station wagon top carrier, film, slide projector, chairs, table, director's chairs, steel cash drawer, mobile PA system, alarm system, stereo receiver, reverberation unit, tape recorder, tapes, speaker system and dual auto turntable. He admitted that some of these items were for his own personal use.

Defendant further stated that he kept no records of students, that he had twenty students over the time he operated the Doncaster School but only two in the Brookshire School, and that very few students paid any money because most had no money. He also testified that when the local Olson Electronics agent asked for the merchandise back:

"I wouldn't have give [sic] it to him if I had it because he wasn't the one I bought it from, they're not the same company. I mean they're a franchise, they're not the same.

    \*    \*    \*    \*    \*    \*

"I would have given it to Olson if I had it, I didn't buy it from Mr. De-Luca."

Defendant stated that he used the name Lawrence Van Rick because it sounded better than Paul Prionas. Defendant admitted prior convictions of cashing stolen money orders and writing a bad check.

The elements necessary to prove a violation of 18 U.S.C., Section 1341 are (1) a scheme to defraud, (2) use of the mails in connection therewith and (3) fraudulent intent. See Devitt & Blackmar, 1 Federal Jury Practice and Instructions, Section 40.05 (1970) and cases cited therein.

There is no question concerning use of the mails. The only issues, since defendant admits use of the assumed name in respect to the Brookshire School, are whether there was a scheme to defraud and, secondly, whether defendant had a fraudulent intent at the time he ordered the merchandise.

The jury found that a scheme existed and that defendant did possess the requisite fraudulent intent at the time he mailed the purchase orders.

■ The only question for us to decide is whether there is substantial evidence to support the jury's findings. In determining this question, the evidence and all permissible inferences therefrom must be viewed in the light most favorable to the government. United States v. Scarpellino, 431 F.2d 475 (8th Cir. 1970); Gay v. United States, 408 F.2d 923 (8th Cir. 1969). Furthermore, it is not our function to pass upon the credibility of witnesses or to attempt to weigh the evidence and substitute our judgment for that of the jury. Alexander v. United States, 241 F.2d 351 (8th Cir. 1957). The question of the sufficiency of the evidence is a question of law which calls for an examination of the record to determine whether there was some evidence, competent and substantial, before the jury, fairly tending to sustain the verdict.

At the outset it is important to note that the indictment charges one scheme to defraud encompassing both the Doncaster and Brookshire Schools. Separate schemes are not charged as to each school. Thus, the proper approach at

this stage of the proceedings is to consider all of the evidence in respect to both schools in applying the substantial evidence test on the issues before us.

We find substantial evidence to support the jury's verdicts. In respect to the counts concerning the Brookshire School, there can be no doubt but that the verdicts are supported by substantial evidence. The use of the assumed name, the fact that defendant had been involved previously in the same type of venture and had sold ordered but unpaid merchandise to third persons, the sparse furnishings in the "Brookshire School", defendant's false statements as to his intentions to return the goods and the amount of expensive equipment ordered when measured against any reasonable expectation of ability to pay are some of the ingredients that satisfy the substantial evidence standard.

As to the counts involving the Doncaster School, we also find substantial evidence to support the verdicts.

It must be conceded that in most mail fraud cases including this one, the intent of the person charged is often the most crucial element in determining guilt or innocence. It has been held that subsequent acts substantially similar to the subject matter forming the basis of the indictment are admissible to prove intent, provided that such acts are not too far removed in time from the transactions in issue. United States v. Marchisio, 344 F.2d 653, 667 (2d Cir. 1965); Hill v. United States, 363 F.2d 176, 180 (5th Cir. 1966); United States v. Alker, 260 F.2d 135, 157 (3d Cir. 1958).

As heretofore indicated, the indictment alleges one scheme involving both the Doncaster and Brookshire Schools. Therefore, since subsequent similar events not included in the indictment are admissible to prove intent, it necessarily follows that a subsequent event included in the indictment, the Brookshire School, is a factor that can be properly considered in respect to defendant's intent as to the prior venture, in this case the Doncaster School. Additionally, the fact that no payment was ever received, that defendant did not carry out his intentions as stated to Mr. DeLuca and the postal inspector, that the "school" itself was sparsely furnished, and that the letters sent by defendant to some of the suppliers who had demanded payment were in the nature of lulling devices, all strengthened the government's case. Bliss v. United States, 354 F.2d 456 (8th Cir. 1966).

Defendant relies on the principle that in a criminal prosecution where the evidence is wholly circumstantial, the proof must exclude every reasonable hypothesis but guilt. United States v. Jones, 418 F.2d 818 (8th Cir. 1969) (Blackmun, J., dissenting).

It should be noted that in the instant case, the trial court properly instructed the jury on circumstantial evidence and that if the circumstances considered in determining guilt were as consistent with innocence as guilt, then the defendant must be acquitted. The trial court also instructed the jury, although not required to do so, as to the every reasonable hypothesis but guilt standard. United States v. Lodwick, 410 F.2d 1202 (8th Cir. 1969).

We have heretofore set out the essence of the evidence produced at trial. Upon careful review of all the evidence considered as a whole in respect to an overall scheme to defraud and employing the substantial evidence test and assuming without deciding that the hypothesis test is applicable, we believe the jury findings of guilt must be upheld.

## II. ADMISSIBILITY OF THE PURCHASE ORDERS

Defendant contends that the trial court committed reversible error in admitting into evidence purchase orders sent by the defendant other than those alleged in the indictment. The trial court admitted this evidence for the sole purpose of showing intent and instructed the jury through a cautionary instruction that these purchase orders were only to be considered in relation to defendant's intent.

It is well established law that evidence of other offenses is admissible to show criminal intent and defendant concedes this point. However, defendant cites cases in which courts have held that if the proffered evidence does not have substantial relevance outweighing its prejudicial effect, the evidence should not be admitted. United States v. Phillips, 401 F.2d 301 (7th Cir. 1968); McHale v. United States, 130 U.S.App.D.C. 163, 398 F.2d 757 (1968); DeVore v. United States, 368 F.2d 396 (9th Cir. 1966). This argument assumes, of course, that defendant is prejudiced by the introduction of the evidence.

■ We have carefully considered the admitted evidentiary matters which defendant claims were so prejudicial as to require reversal. We find that the admission of these, purchase orders was proper for the limited purpose of showing intent and that little, if any, prejudice resulted from these admissions.

## III. CROSS-EXAMINATION OF DEDENDANT AS TO USE OF ASSUMED NAME

■ Defendant took the stand in his own behalf. On cross-examination, the government inquired, over defendant's objection, into defendant's use of the name Lawrence Van Rick. Defendant objected that this cross-examination was beyond the scope of direct examination since defendant had not been asked about the assumed name. The trial court, in overruling the objection, stated that his reason for doing so was that defendant on direct examination had testified in respect to certain exhibits which carried the signature of Lawrence Van Rick. We agree with the trial court that defendant opened the door for cross-examination on the use of the assumed name and find that the cross-examination did not exceed its proper scope.

## IV. RESERVATION OF DEFENDANT'S MOTION FOR ACQUITTAL

Defendant moved for judgment of acquittal at the close of the government's case. The motion was argued in full to the trial court. The trial court reserved ruling.

Rule 29, Federal Rules of Criminal Procedure, 18 U.S.C.A., governs motions for judgment of acquittal. It must be conceded that while Rule 29(b) expressly provides for reserving ruling on a motion for acquittal made *at the close of all the evidence,* there is no explicit provision for reserving ruling when the motion is made at the close of the government's case in chief.

■ It has been held, however, that there is no prejudicial error in the trial court's reserving ruling on a motion for judgment of acquittal at the close of the government's evidence where the evidence is sufficient to present a jury question as to defendant's guilt. Moore v. United States, 375 F.2d 877 (8th Cir. 1967) cert. den., 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110 (1967). *Moore* also discussed the principle that a defendant who offers evidence after the denial of a motion for acquittal at the close of the government's case in chief waives any claim as to the sufficiency of that case considered alone. Contra Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963). Aside from any waiver question, however, we find that the Government's evidence, standing alone, was sufficient to justify submission of the case to the jury.

Affirmed.