**UNITED STATES of America, Appellee,**

v.

**Harry Don MARLEY, Appellant.**

**No. 76–1759.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1976.
Decided Feb. 14, 1977.

---

J. Patrick Green, Omaha, Neb., for appellant; Thomas McQuade, Omaha, Neb., on brief.

Daniel E. Wherry, U. S. Atty., Omaha, Neb., for appellee.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Harry Don Marley appeals from his conviction by the district court [1] of one count (Count XXVI) of wire fraud in violation of 18 U.S.C. §§ 1343 and 2.[2] The subject of the count was a telephone communication which occurred November 11, 1974, between Marley and Marion Bonham of York, Nebraska, made in furtherance of a scheme to defraud Nebraska grain elevator operators. Appellant Marley alleges there was insufficient evidence to support the district court's findings that Marley either knew that the statements he made to Bonham were untrue or that he acted in reckless disregard of the truth, and that Marley knew at the time the statements were made that a scheme to defraud was afoot, and the statements were made for the purpose of executing the scheme. We affirm.

The parties at trial stipulated to the existence of a scheme to defraud grain elevator operators. The scheme consisted of people coming from Oklahoma to Nebraska and making purchases of grain. The conspirators would establish credit or financial stability with those intended to be defrauded through one or more legitimate grain commodity transactions. After credit had been established, further grain purchases would be made. Payments for the subsequent purchases would be made by checks

---

1. The honorable Robert V. Denney, United States District Judge for the District of Nebraska. Sentence imposed was a $500 fine and one year probation.

2. 18 U.S.C. § 1343 states as follows:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

   18 U.S.C. § 2(a) states as follows:

   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

drawn on the account name "Redwood Farms" on banks in rural areas of Oklahoma. Prior to the presentation of the checks to the bank upon which they were drawn, the parties to the schemes would stop payment on the checks. The central figure in this scheme was Elvin Floyd Woody.

Until late in October 1974 the Redwood Farms account was at the First National Bank of Sallisaw, Oklahoma. On October 25, 1974, an account in the name of Redwood Farms was opened by Woody in the Sequoyah State Bank in Muldrow, Oklahoma. Appellant Marley was then president of the Sequoyah State Bank. On November 11, 1974, Marion Bonham, president of the First National Bank in York, Nebraska, at the request of his customer Coulter, who was in the process of selling grain to Redwood Farms, telephoned appellant Marley to verify the status of the Redwood Farms balance. Bonham testified at trial to Marley's unequivocal statement that the Redwood Farms account was "good" and that checks totalling $55,000 written on the account for grain would clear when presented through regular banking channels. The evidence showed that the balance of the account at the time of the call was only $13,489. These false representations made by Marley by wire across state lines formed the basis of the count upon which Marley was convicted.

Appellant Marley contends that there is insufficient evidence to support the district court's finding that Marley falsely represented that the $55,000 in checks was backed by sufficient funds and would clear when presented for payment because he knew, or acted in reckless disregard of the truth, when he failed to disclose that the Redwood Farms account contained substantially less than the amounts for which Woody had issued checks. A similar argument is made by appellant that there is insufficient evidence to support the district court's finding that Marley knew by November 11, 1974, that the account was being used for fraudulent purposes and that his statements would aid the scheme.

■ At the outset we note that in criminal cases tried to the court, factual findings made by the trial judge must stand unless determined to be clearly erroneous, at least where such findings concern matters other than the ultimate question of guilt. *United States v. Rischard*, 471 F.2d 105, 107 (8th Cir. 1973); *Kilcrease v. United States*, 457 F.2d 1328, 1331 (8th Cir. 1972). In this case the district court made factual findings concerning Marley's knowledge of the falsity of his statements and his knowledge concerning the fraudulent scheme. These factual determinations, along with the court's determination of Marley's specific intent to carry out an essential step in the scheme to defraud at the time the statements were made, were the only issues really contested by Marley, since the existence of the scheme to defraud had been stipulated, the falsity of the credit information provided by Marley was unquestioned, and the interstate element of the telephone call was essentially uncontradicted. Therefore, the resolution of these factual issues was the equivalent of a determination of quilt. When the determination of a question of fact is also determinative of the ultimate question of quilt, it is the duty of this court to determine whether or not there is substantial evidence, taking the view most favorable to the government, to support the fact determination by the trial court. *United States v. Rischard, supra*, 471 F.2d at 107.

■ It should also be noted that criminal intent and guilty knowledge relate to the condition of the mind. Since the condition of the mind is rarely susceptible of direct proof, recourse must be had to all pertinent circumstances. *United States v. Smallwood*, 443 F.2d 535, 541 (8th Cir. 1971); *United States v. Prionas*, 438 F.2d 1049, 1053 (8th Cir.), *cert. denied*, 402 U.S. 977, 91 S.Ct. 1683, 29 L.Ed.2d 144 (1971); *Moses v. United States*, 297 F.2d 621, 624 (8th Cir. 1961); *Brickey v. United States*, 123 F.2d 341, 344 (8th Cir. 1941).

■ It must also be noted that the courts have long recognized that scienter may be established where reckless disregard of

truth or falsity is present. *Spurr v. United States*, 174 U.S. 728, 735, 19 S.Ct. 812, 43 L.Ed. 1150 (1899); *United States v. Henderson*, 446 F.2d 960, 966 (8th Cir. 1971). "One who acts with reckless indifference as to whether a representation is true or false is chargeable as if he had knowledge of its falsity." *Irwin v. United States*, 338 F.2d 770, 774 (9th Cir. 1964), *cert. denied*, 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965).

■ With these standards in mind, the government argues convincingly that there is sufficient evidence establishing Marley's knowledge of the falsity of the statements uttered by him on November 11, 1974, and his knowledge that the Redwood Farms account was being used for fraudulent purpose, and despite such knowledge, he intentionally provided false credit information about the account, thereby aiding and abetting execution of the scheme to defraud. For instance, the evidence established that the week preceding the November 11 telephone call, Wendell Coulter, the Pflug Grain Elevator manager, had been dealing with a Redwood Farms driver in relation to a potential grain sale to Redwood Farms. Pursuant to the driver's suggestion, Coulter called the Sequoyah State Bank and was told by a bank employee that he could accept a check for approximately $25,000 drawn on the Redwood Farms account. On November 7, the trucks were loaded with grain sold for $25,917.48. Since the trucks were planning to return for more purchases, Coulter contacted his banker in York, Nebraska, for another verification of the Redwood Farms' financial condition. An employee of the York bank was informed that the check taken by Coulter would not clear. Coulter thereupon refused to sell any more grain to Redwood Farms.

On November 9, 1974, Elvin Woody telephoned Coulter, protesting his refusal to sell any more grain to Redwood Farms. After Coulter informed Woody of the specific problem, Woody replied, "I'll have my banker call you on Monday and he will get this all cleared up." The telephone records of the bank indicate that a call was placed

from the Sequoyah State Bank to Coulter on Monday, November 11. In the words of Coulter, Marley stated to him that "when that first $25,900 check arrived it would be clear and to go ahead and load the other seven trucks that were there and that check would also be taken care of."

After receiving this telephone call, Coulter decided to verify the information. He called Marion Bonham, his own banker, and asked him to check with Marley regarding the Redwood Farms account. Bonham testified that he called the Sequoyah State Bank on November 11, 1974, and spoke to a person who identified himself as Marley. Bonham asked about the $55,000 worth of grain sales to Redwood Farms. Marley stated that Redwood Farms was a good company, that both checks were good and that both checks would clear when presented through regular channels. Evidence also showed that had anyone checked the balance of the Redwood Farms account on November 11, the available information would have shown a balance of $13,489.90.

The Sequoyah State Bank was a relatively small bank which had approximately ten employees and deposits totalling only $3,300.000. One of the deposits by Woody had occurred under circumstances that, according to the vice president of the bank, "would catch your attention right away." This was in reference to the day that Woody brought $100,000 to the bank in cash in a paper sack and deposited it in the new Redwood Farms account. Testimony revealed that Marley was present during this unusual deposit. Additionally, Marley had been notified by the bank's attorney that Woody was having some difficulty with his prior bank and was moving his account to the Sequoyah State Bank. Woody opened the Redwood Farms account at the Sequoyah State Bank with an $11,000 deposit on October 25, 1974. The $100,000 cash deposit was made on October 29, 1974, but when Bonham called on November 11, 1974, the balance had been reduced to $13,489.90. Evidence further revealed that Marley had no policy or agreement with Woody to cover large overdrafts.

The record further discloses that Robert Gadway, manager of the Bellamy Grain Corporation, testified that on November 11, 1974 (the same day that Marley called Bonham), he received a telephone call from Elvin Woody, who inquired about a possible purchase from Gadway of 15,000 bushels of corn. When Gadway asked about the method of payment, Woody responded that he would like to pay by check. Woody then gave the Sequoyah State Bank as a reference and told Gadway that he should speak to Donald Marley. He then gave Marley's telephone number to Gadway.

It should also be noted that Marley's actions which followed shorty after the November 11 telephone conversation are entirely consistent with the trial court's findings concerning Marley's guilty intent. *See United States v. Prionas, supra*, 438 F.2d at 1053. William Trusdale, an attorney representing Bellamy Grain Company, testified that he and Gadway visited Marley on November 19, 1974. The purpose of the visit was to investigate a stop payment which had been placed on Bellamy's check by Woody. Marley reported that there was sufficient money in the account to cover the check but the stop payment order was still in effect. He further stated that there had only been one other stop payment order on the Redwood Farms account.[3] There had, in fact, been three prior stop orders. Marley remarked to Trusdale and Gadway that "Mr. Woody must be buying all the corn in Nebraska" because he had received eight or ten calls that morning concerning the Redwood Farms account.

On November 20, 1974, Marley told an FBI agent who was investigating Woody and the Redwood Farms account that the account was in good standing and that the account had not had any insufficient-fund checks drawn on it. On November 25, 1974, two men from the Syracuse, Nebraska, Farmers Cooperative Elevator visited Marley regarding a stop payment on a $25,750 check drawn on the Redwood Farms account. Marley stated that there were

funds to cover the check and the check would be paid if the stop payment order was lifted. However, four days earlier the Redwood Farms account was almost completely closed when all but $3 was transferred to a new account. Evidence further revealed that Marley was notified of at least seven stop payments in one day in December on the new account.

When all of the evidence is viewed in a light most favorable to the government, we conclude there was substantial evidence to support the district court's findings concerning Marley's knowledge of the falsity of his statements made in furtherance of the scheme to defraud and his participation as an aider and abettor in the execution of the scheme in violation of 18 U.S.C. §§ 1343 and 2.

Affirmed.

WEBSTER, Circuit Judge, concurring.

I entertain some doubt whether an outsider to a scheme to defraud may be held accountable as a principal simply because he made statements in reckless disregard of the truth or falsity thereof. For that reason, I hesitate to place reliance on the line of cases cited in the majority opinion, originating with *Spurr v. United States*, 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150 (1899). I nonetheless would affirm for the other reasons stated in the majority opinion.

A scheme to defraud by others was conceded by stipulation at trial. In order for appellant to be guilty, the government had the burden of proving beyond reasonable doubt that he in some way associated himself with the scheme to defraud and in some way sought by his actions to make it succeed. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *see Snyder v. United States*, 448 F.2d 716, 718 (8th Cir. 1971). My reading of the full record convinces me that the District Court, taking the evidence in the light most favorable to the government, was justified in finding that appellant was aware

---

**3.** On the previous day, November 18, Marley told the manager of the Plymouth, Nebraska, elevator that there had been no problems with the Redwood Farms account.

of the essential aspects of the scheme and acted in furtherance of it by his telephonic assurances.