UNITED STATES of America, Appellee,

v.

George W. CADY, Appellant.

No. 77–1460.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1977.

Decided Dec. 9, 1977.

Rehearing Denied Jan. 10, 1978.

6. It should be noted that Weddell was allowed an investigator and gained maximum discovery prior to trial.

Norman S. London, St. Louis, Mo., for appellant.

Richard J. Billeaud, Asst. U.S. Atty., St. Louis, Mo., argued, Barry A. Short (former U.S. Atty.), on brief, for appellee.

Before STEPHENSON, Circuit Judge, MARKEY, Chief Judge,* and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

Appellant George W. Cady appeals his conviction on eight counts of mail fraud and one count of conspiracy to commit mail fraud. The case was tried to the District Court.[1] On appeal appellant contends the evidence supporting his conviction was insufficient in three respects: (1) failure to prove beyond reasonable doubt that appellant was a party to the scheme to defraud; (2) failure to prove beyond a reasonable doubt that the mails were used in furtherance of a scheme to defraud; and (3) failure to prove beyond reasonable doubt that the mailings were of the quality required to invoke the federal statute. Additionally, he

contends that erroneous and prejudicial information furnished to the grand jury deprived him of his Fifth Amendment due process rights. We reject these contentions and affirm the judgment of conviction.

Viewed in the light most favorable to the government, the evidence establishes the following facts. Appellant Cady is an attorney with an active personal injury practice. Together with Dr. A. Jesse Wolff, a chiropractor, he carried out a scheme in which medical reports showing an inflated number of office visits to Dr. Wolff by accident victims were submitted to insurance companies in support of claims for injuries incurred in automobile accidents. Some of these persons were referred to Dr. Wolff by Cady, while others retained Cady's services only after they had previously consulted Dr. Wolff. There is also evidence that documents indicating time lost from employment in excess of that actually lost were submitted by Cady to the insurance companies. These inflated claims caused insurance company adjusters to pay larger sums in settlement of the claims than might otherwise have been necessary.

## I.

### The Scheme to Defraud

To establish a violation of § 1341 the government must prove: (1) the existence of a scheme to defraud, and (2) the mailing of a letter for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Brown*, 540 F.2d 364, 373 (8th Cir. 1976). Appellant's initial attack challenges the sufficiency of the evidence to establish his knowing participation

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri. Appellant was originally indicted on fifteen counts charging violation of the mail fraud statutes, 18 U.S.C. §§ 1341, 1342, and one count of conspiracy to violate the same in violation of 18 U.S.C. § 371. At the close of its case, the government moved

for dismissal of seven of the mail fraud counts. The trial judge convicted Cady on all of the remaining counts and sentenced him to a prison term of five years on each of the substantive counts, the terms to run concurrently, and a term of five years on the conspiracy count. Execution of the latter sentence, however, was suspended and a three-year term of probation, to follow the prison term on the other counts, was imposed. In addition, Cady was fined a total of $18,000 on the various counts.

in a scheme to defraud. In matters other than the ultimate question of guilt, factual findings made by a trial judge in a trial to the court without a jury must stand unless they are clearly erroneous. *United States v. Marley*, 549 F.2d 561, 563 (8th Cir. 1977); *United States v. Rischard*, 471 F.2d 105, 107 (8th Cir. 1973). When the determination of a question of fact is also determinative of the ultimate question of guilt, it is the duty of the appellate court to determine whether there is substantial evidence, taking the view most favorable to the government, to support the fact determination by the trial court. *United States v. Marley, supra*, 549 F.2d at 563. This standard is the same as that used to review a determination made by a jury. *United States v. Rischard, supra*, 471 F.2d at 107.

Because the element of knowledge is rarely capable of direct proof, the fact-finder must view all of the pertinent circumstances to determine criminal intent or guilty knowledge. *United States v. Marley, supra*, 549 F.2d at 563. The government's evidence, viewed under the proper standard, is sufficient to establish Cady's role in the scheme and the use of the mails in furtherance thereof. In conjunction with the circumstantial evidence, the testimony of Dr. Wolff and several of the accident victims supports Judge Meredith's finding that Cady was a participant in the fraudulent scheme.[2]

Dr. Wolff's testimony directly implicated Cady in the scheme. The testimony of an accomplice, even if uncorroborated by other evidence, is competent evidence. *United States v. Micciche*, 525 F.2d 544, 546 (8th Cir. 1975); *United States v. Montgomery*, 503 F.2d 55, 57 (8th Cir. 1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 839 (1975). In this case there was abundant corroboration. The credibility of that testimony was for the trier of fact. Dr. Wolff testified that he prepared inflat-

ed medical reports for Cady. While he prepared some false medical reports without special instructions, he testified that on many occasions he received instructions from Cady over the telephone as to what information or treatment duration to show on the medical reports.

One of these situations involved the claim of Susan Lehman, who at the time of her settlement was employed as a legal secretary in Cady's law office. She testified that after notifying Cady of her accident, he suggested that she consult with Dr. Wolff. She never went to Dr. Wolff for treatment or for any other reason, but a copy of a medical bill signed by Dr. Wolff showing twenty-eight visits was sent by Cady to MFA Insurance Co. in support of a claim on behalf of Miss Lehman. Dr. Wolff testified that he received information with respect to the details of her accident and instructions as to number of visits to report from Mr. Cady by telephone.

The record also reveals testimony by one Jill Remaly, who feigned injury after she and three other persons were involved in an accident. She consulted with Cady and told him of the accident and the feigning of injuries. He sent Miss Remaly to Dr. Wolff; she talked to Wolff but was not treated by him. No claim was ever filed in this matter because soon thereafter Miss Remaly was involved in a second accident. The claim for personal injury in the first case was dropped, and although Miss Remaly was only slightly injured in the second accident and received no medical treatment, Cady urged her to claim an injury and filed a claim for her which included a medical bill from Dr. Wolff's clinic in the amount of $175. Cady also submitted a lost work statement even though Miss Remaly was not unable to work and did not miss any time from her job. This claim was ultimately settled for $1,987.

---

2. In its brief the government argues that knowledge, or its equivalent, can be established as a result of reckless disregard of, or indifference to, the truth, *United States v. Marley*, 549 F.2d 561, 563–64 (8th Cir. 1977), and that Cady's activities here support, at the very least, a finding that he was recklessly indifferent to the truth. This Court need not reach this issue since there is sufficient independent evidence of his knowing and intentional participation in the scheme.

These are merely the clearest examples of extensive evidence from which the trier of the fact could find beyond reasonable doubt that Cady knowingly and intentionally participated in the fraudulent scheme.[3]

## II.

### Use of the Mails

Cady also challenges the sufficiency of the government's evidence to establish the use of the mails in furtherance of the scheme. Establishing the mailing element of the offense requires proof that: (1) the accused used or caused the use of the mails, and (2) the use was for the purpose of executing the deceptive scheme. *United States v. Brown*, 540 F.2d 364, 375–76 (8th Cir. 1976).

### A. Proof of Mailing.

Our examination of the record convinces us that there was substantial testimony by those who received the mail matter described in the surviving counts[4] that it came in the mails from Cady. This testimony was based upon personal knowledge, or the fact that the date receipt stamp appearing on the mail matter was routinely affixed in the respective mail rooms of the recipients, and that these companies did not process hand-delivered mail, if there was any, in this manner.[5] This testimony was well corroborated. These practices are strong circumstantial evidence of mailing and the trier of the fact was entitled to consider them.[6] *See, e. g., United States v. Minkin*, 504 F.2d 350, 352–53 (8th Cir. 1974); *United States v. Joyce*, 499 F.2d 9, 17 (8th Cir. 1974); *United States v. Brickey*, 426 F.2d 680 (8th Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970); *United States v. Leathers*, 135 F.2d 507 (2d Cir. 1943).

### B. Purpose of the Mailings.

Appellant also contends that the mailings set forth in the indictment were merely incidental to the scheme alleged and intrastate in character. From this he argues that a federal offense under § 1341 has not been established.

Because the mail fraud statute is written to apply to any scheme to defraud in which the mails are used, it is to be read expansively to effectuate that purpose. *United States v. Mirabile*, 503 F.2d 1065, 1066 (8th Cir. 1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975). To fall within the mail fraud statute the mailing must be for the purpose of executing the scheme, must be employed before the scheme reaches fruition, but need not be an essential element of the scheme. *Id.* at 1067. Nonetheless, there must be evidence that the mailings were "sufficiently

---

**3.** It was argued that evidence admitted in connection with counts dismissed at the close of the government's case unfairly prejudiced Cady's case. Evidence of other similar crimes or acts is admissible to prove opportunity, intent, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b); *United States v. Davis*, 557 F.2d 1239, 1246 (8th Cir. 1977); *United States v. Maestes*, 554 F.2d 834, 836–38 (8th Cir. 1977); *United States v. Jardan*, 552 F.2d 216, 218 (8th Cir.), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). This evidence was probative on the issue of Cady's knowledge and the existence of a common scheme, and there has been no showing that its value was substantially outweighed by the danger of prejudice. *See* Fed. R.Evid. 403.

**4.** *See* note 1 *supra*.

**5.** Dr. Wolff testified that he mailed the documents described in Count 4 of the indictment, as well as other documents, to Cady. All of the mailings described in the other counts of the indictment were from Cady's office to the various claims offices, and there was substantial evidence in the record from which the trier of the fact could find that Cady caused such mailings.

**6.** In *United States v. Joyce*, 499 F.2d 9 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974), the court found the use of date stamps to be insufficient proof of receipt through the mails. In that case, however, the company date stamped all incoming matter, including hand-delivered correspondence, which it regularly received. In contrast, the evidence in this case was that almost no correspondence was hand delivered and only mailed matter would have been date stamped upon receipt.

closely related to [the] scheme to bring [the defendant's] conduct within the statute." *United States v. Brown, supra,* 540 F.2d at 376 (brackets in original), *citing United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

▮▮▮ The mailings charged in the indictment and proved at trial meet these requirements in all particulars. The false information related to special damages, such as medical treatment and loss of earnings, and were intended to induce, without litigation, a larger settlement than the facts justified. The mailings were thus all in furtherance of the scheme to defraud and occurred prior to the fruition of the scheme. *See United States v. Perkal,* 530 F.2d 604 (4th Cir. 1976) (mailing of fraudulent reports to insurance companies was use of the mails to defraud).[7]

### III.

#### The Grand Jury Presentation

Appellant's final contention is that he was denied due process of law as a result of the presentation of erroneous evidence to the grand jury, thus denying him his right to an impartial and unbiased grand jury. The particular evidence to which he objects consisted of carbon copies of settlement checks totalling $4500 together with testimony that his clients in that case received only about $1500. No evidence was presented that would indicate that these checks were in fact returned to the insurance company by Cady and new checks issued in the amount of $1975 in settlement of the case. He argues that the grand jury very likely drew an incorrect inference that Cady's clients only received about $1500 in a case that was settled for $4500.

This contention may be dealt with summarily. No evidence was offered to show a purposeful act of deception by a government prosecutor. The inference, even if drawn by the grand jury, would not supply or support a probable cause finding upon which to return an indictment. The disputed exhibits were only a minuscule part of the government's evidence to the grand jury.

▮▮▮ The Supreme Court has declined to adopt a rule permitting defendants to challenge indictments on the ground that they are not supported by sufficient or competent evidence. *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The Supreme Court stated in *United States v. Blue, supra,* 384 U.S. at 1255 n. 3, 86 S.Ct. at 1419.

> It does not seem to be contended that the tainted evidence was presented to the grand jury; but in any event our precedents indicate this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether.

This Court has squarely refused to apply the exclusionary rule to grand jury proceedings. *West v. United States,* 359 F.2d 50, 56 (8th Cir.), *cert. denied,* 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966); *Tarvestad v. United States,* 418 F.2d 1043, 1049 (8th Cir. 1969), *cert. denied,* 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970). *A fortiori,* absent some evidence of gross purposeful deception by the prosecutor, an indictment legally valid on its face will not be overturned because it is possible to speculate that some of the evidence presented to the grand jury may have permitted an erroneous adverse inference as to the accused's professional practices. The District Court

---

**7.** It is irrelevant that all of the mailings in this case may have been intrastate in nature, *see United States v. Mirabile,* 503 F.2d 1065 (8th Cir. 1974) (involving mailing of understated gross sales figures to the state tax authority), or that the mailings were very localized in their scope, *see United States v. Minkin,* 504 F.2d 350, 353 (8th Cir. 1974), *cert. denied,* 420 U.S.

926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975) (mailings went a distance of twelve miles). As we said in *United States v. States,* 488 F.2d 761, 767 (8th Cir. 1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974), "The focus of the statute is upon the misuse of the Postal Service . . . ."

has wide discretion in these matters, and we hold it did not abuse its discretion in overruling appellant's supplemental motion at the close of the case to dismiss the indictment. *See Truchinski v. United States,* 393 F.2d 627, 632–33 (8th Cir.), *cert. denied,* 393 U.S. 831, 89 S.Ct. 104, 21 L.Ed.2d 103 (1968).

Affirmed.