**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James P. WYANT and Max Griffin,
Defendants-Appellants.**

**Nos. 77–1862, 77–1863.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1978.

Decided May 30, 1978.

Donald S. Cooley, Springfield, Mo., argued and on brief, for defendants-appellants.

Robert D. Hiaring, Asst. U. S. Atty., Sioux Falls, S.D. (argued), and David V. Vrooman, U. S. Atty., Sioux Falls, S.D., on brief, for plaintiff-appellee.

Before LAY and BRIGHT, Circuit Judges, and VAN SICKLE,* District Judge.

VAN SICKLE, District Judge.

James P. Wyant and Max Griffin appeal their conviction for conspiracy (18 U.S.C. § 371)[1] and their conviction for transportation and sale of stolen goods (18 U.S.C. § 2314 and § 2315).[2]

The original Indictment charged James P. Wyant, Max Griffin and four others with conspiracy, interstate transportation of property taken by fraud, and the selling and disposing of property taken by fraud and transported interstate. A superseding indictment was later returned. The superseding indictment reduced the original five counts to three. Finally, two days prior to the day set for trial, the Government dismissed all the co-defendants except Wyant and Griffin. Both Wyant and Griffin pleaded innocent. They were each convicted on all three counts after a jury trial.

The Government's principal witness was one Kenny Leisinger. He was a participant in the unlawful conduct, having served as elevator manager in each of the two grain elevators which suffered losses. Leisinger had been convicted of a related offense in South Dakota. He was a co-defendant in the original conspiracy charge in Federal Court, but upon his agreement to cooperate, and in the light of the State Court conviction, the Federal charges were dropped.

Leisinger worked at the Farmers Co-Operative Elevator in Coleman, South Dakota, from 1969 to 1974. In 1973 or 1974, he became the assistant manager. Leisinger testified that in Coleman he conducted a

---

\* Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

1. 18 U.S.C. § 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

2. 18 U.S.C. § 2314. Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud;

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
18 U.S.C. § 2315. Sale or receipt of stolen goods, securities, moneys or fraudulent State tax stamps

Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted or taken; or  .  .  .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

great deal of business with Wyant and Griffin. Leisinger stated that in 1973 or 1974, Griffin complained that he was not getting his full measure of grain purchased from the Coleman elevator. Because of the claimed shortages, Leisinger allotted Griffin a little extra grain. Griffin showed his appreciation by giving Leisinger fifty dollars. As time went on, Leisinger's largesse developed to the point where the was giving Griffin and his associates entire truckloads of grain. Leisinger specifically stated that Wyant was also one of the people who took truckloads of grain without making payment to the elevator.

As the amounts of grain given to Griffin and Wyant increased, so too did the presents received by Leisinger. Leisinger first received $50.00; then a CB radio; a used Monte Carlo automobile; a pair of Missouri mules; and finally fencing and house building materials.

In June of 1974, Leisinger was left in charge of the elevator while the manager was away on a fishing trip. Over a two night period, Leisinger stated, he gave at least eight truckloads of grain to Griffin, Wyant and others.

Eventually a shortage of grain was discovered at the Coleman elevator and Leisinger was fired.

In August of 1974, Leisinger found employment as General Manager for the Western Grain Company located at Flandreau, South Dakota. Griffin and Wyant soon transferred their activities to the Western Grain Company. It was during his service as manager of Western Grain Company that Leisinger was given the Monte Carlo automobile; the team of mules; the fencing material; and the house building materials. Grain losses were so great that Western Grain Company was forced to close on April 29, 1975.

Appellants' first argument is that the Trial Court erred in overruling their motion for acquittal on Count I, conspiracy, for failure to prove conspiracy as a matter of law.

■ Once a motion for acquittal is made a trial court must make a finding as to whether or not:

. . . the evidence viewed in light most favorable to the Government is such that reasonable minds "might differ" then the question becomes one of fact for the jury to resolve, and not one of law to be determined by the courts. *Isaacs v. United States,* 301 F.2d 706, 727 (8th Cir.) *cert. denied,* 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

The evidence in this case revealed that all the illegal grain transactions were conducted with the same elevator employee, Kenny Leisinger. Leisinger testified that both Griffin and Wyant, on different occasions, accepted truck loads of grain under circumstances which, the jury could find, showed an intent not to remit for them.

■ In 1974, after Leisinger left Coleman, Griffin and Wyant conducted only three more transactions at the Coleman elevator. Griffin and Wyant then began doing business at the Western Grain Company in Flandreau, South Dakota, after Leisinger became its general manager. The testimony of Leisinger revealed that the illegal transactions continued throughout his 1973–1974 term of employment at Coleman and his 1974–1975 period of employment at Western Grain Company. As stated in *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (cited and approved in *Hamling v. United States,* 418 U.S. 87, 125, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)):

Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a "development and a collocation of circumstances".

■ The trial court correctly found that, viewed in the light most favorable to the Government, there was sufficient evidence for reasonable minds to differ on the issue of conspiracy, and that therefore the issue was correctly given to the jury for their determination.

■ Appellant James Wyant further argues that even in the event this Court finds that the conspiracy count was properly given to the jury, the court should have dismissed it as to him because there was no showing of an unlawful agreement on his part. Wyant's argument must fail.

> Once the existence of a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient proof of his involvement in the scheme. *United States v. Schmaltz,* 562 F.2d 558, 560 (8th Cir. 1977).

The evidence of Wyant's involvement in the conspiracy was sufficient to carry the matter to the jury.

■ The appellants also argue that the trial court erred in overruling their motion for acquittal on Counts II and III. They assert that the business records of the Western Grain Company, Flandreau, South Dakota, were erroneously admitted into evidence. Appellants rely on both the applicable case law and 28 U.S.C. § 1732. But 28 U.S.C. § 1732, as amended, relates to photocopies of business records. Since the business records admitted into evidence were originals, not photocopies, Rule 803(6) of the Federal Rules of Evidence governs.[3]

Western Grain Company's business records were delivered to Wohlenberg & Gage, Public Accountants, by Mr. Ludgate, a corporate officer of Western Grain Company. Mr. Ludgate testified that the records were a complete set of business records. Mr. Gage, Public Accountant, testified that he had in fact received the records from Ludgate and that the records covered Western from its beginning to its closing date. Also testifying was Mr. Jerde, the accountant who originally compiled the recordkeeping system for Western. Finally, Leisinger, as the General Manager for Western, was able to confirm that portions of the records reflected his daily activities.

A recent case which dealt with the amount of discretion to be used by a trial judge was *United States v. Wigerman,* 549 F.2d 1192, 1194 (8th Cir. 1977), in which the following statement was made:

> We have repeatedly stated that * * * [t]he trial court has broad discretion in determining the admissibility of documents such as business records.

The foundation for Western's business records was established by the originator and person who compiled them; they were given to an accounting firm by a corporate officer; and were verified by Leisinger, the man who filled many of the day to day work sheets in his capacity as General Manager. Such extensive foundation is more than adequate to support the Court's ruling.

■ Appellants also argue that the government failed to prove the $5,000 jurisdictional requirements necessary under both 18 U.S.C. § 2314 and § 2315.

Shortages of grain stock were found at both Coleman and Western. Government inspectors estimated, by comparing the grain listed in the records with the grain actually in the elevators, a shortage of approximately 17,000 bushels of corn, 18,000 bushels of oats and 7,000 bushels of beans occurred at Coleman between 1973 and 1974. A like analysis found shortages at Western to have amounted to a total of 31,576 bushels of corn and 3,041 bushels of oats as of the end of April, 1975.

The above figures show only that there was substantial shortages. The appellants become implicated on at least a portion of the shortages as a result of Leisinger's testimony. When possible the Government

---

**3.** Rule 803(6) Records of regularly conducted activity.

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

would corroborate the testimony with business records and collateral source verification.

Leisinger's testimony revealed that Max Griffin received at least the following amounts of grain without payment of compensation to the elevator:

1. June of 1974, at Coleman, S. D., 1,000 bushels of beans at $10 . . . . . . . . . . . $10,000.00

2. Fall of 1974, at Flandreau, S. D., 1,000 bushels of corn at $2.50 to $3.00 . . 2,500.00

3. March 15, 1975, at Flandreau, S. D., 1,500 bushels of oats at approximately $1.94 . . . . . . . . . . . . . . . . . . . . 2,924.21

4. April 23, 1975, at Flandreau, S. D., 1052.50 bushels of corn received, of which 800 bushels were paid for, leaving about 252.50 bushels received without compensation being made, 252.50 at approximately $3.02 . . . . . . . . . . . 762.65

  TOTAL MINIMUM RECEIVED  $16,186.86

The testimony of Leisinger revealed that James Wyant received at least the following amounts of grain without payment of compensation to the elevator:

1. June of 1974, at Coleman, S. D., 1,000 bushels of beans at $10 . . . . . . . . . . . $10,000.00

2. Fall of 1974, at Flandreau, S. D., 1,000 bushels of corn at $2.50 to $3.00 . . . . . . . . . . . . . . . . . . . . . . . . . 2,500.00

3. April 23, 1975, at Flandreau, S. D., 1058.75 bushels of corn at approximately $3.02 . . . . . . . . . . . . . . . . . . . . 3,197.42

4. April 15, 1975, at Flandreau, S. D., 1092.14 bushels of corn at approximately $2.39 . . . . . . . . . . . . . . . . . . . . 2,621.13

5. April 7, 1975, at Flandreau, S. D., 1442.5 bushels of oats at approximately $1.64 . . . . . . . . . . . . . . . . . . . . 2,380.12

6. Prior to April 24, 1975, at Flandreau, S. D., 1424.06 bushels of oats at approximately $1.64 . . . . . . . . . . . . . . . . . 2,349.70

  TOTAL MINIMUM RECEIVED  $23,048.37

Appellants argue that the prices quoted are from the points of sale of the grain in Missouri, and not at the point of taking in South Dakota. But grains are fungible goods. And the difference in price was shown to be due to:

a. Cost of transportation, and

b. Reasonable profit.

Thus the jury could, using its common experience, reason from the value at point of delivery back to the value at point of taking, to establish value at least for jurisdictional purposes. And the jury did have evidence from which it could make the jurisdictional valuations.

■ Next, the appellants argue that assuming the $5,000 jurisdictional amounts exist, there was no sufficient showing that the goods were in interstate transportation as required by both 18 U.S.C. § 2314 and § 2315. The Government had introduced a number of sales by both defendants to Hartville Milling Company, Hartville, Missouri, which corresponded quite closely with dates and total bushels taken from Coleman and Flandreau. Also, the key Government witness testified, on numerous occasions, as to the general practice of Griffin and Wyant of picking up illegal loads in South Dakota and selling them in Missouri. The evidence was submitted to the jury, and from that evidence the jury found that the facts supported the allegation that the loads of grain were moved in interstate commerce. The Court in *Glasser v. United States, supra,* 315 U.S. at 80, 62 S.Ct. at 469, stated:

> It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.

After consideration of all the evidence, we find that the evidence did support the verdict as to both defendants and as to all counts.

■ The appellants' third main argument is that the Trial Court erred in refusing their requested instruction, which reads as follows:

> If you have any reasonable doubt as to whether the defendants genuinely believed the grain they hauled from Coleman and Western Elevators was not taken by fraud nor did they know Kenneth Leisinger intentionally was leaving said transactions off the elevator books, no matter how reckless or unobservant they were, you must then find the defendants not guilty on all counts.

In the light of *United States v. Marley,* 549 F.2d 561 (8th Cir. 1977), such an instruc-

tion would have been error. In *Marley*, the Court pointed out on p. 563, that:

It must also be noted that the courts have long recognized that scienter may be established where reckless disregard of truth or falsity is present. *Spurr v. United States*, 174 U.S. 728, 735, [19 S.Ct. 812, 43 L.Ed. 1150] . . . (1899); *United States v. Henderson*, 446 F.2d 960, 966 (8th Cir. 1971).

The trial judge gave a general instruction stating that it must be proven that:

Now, four essential elements are required to be proved in order to establish the offense of interstate transportation of property known to have been taken by fraud, as charged in Count II of the indictment, as follows:

. . . Fourth, that at the time the accused transported the property or caused it to be transported, he knew that the property had been taken by fraud.

It is not necessary for the Government to prove that each of the accused personally obtained the property by fraud or who took it at the time of the transportation, but it must be established that the defendants knew that said grain had actually been taken by fraud.

The Court's general instruction clearly covered the "knowledge" aspect that appellants sought in their Proposed Instruction No. 1, and any further discussion of "knowledge" would have been repetitious.

In *Wright v. United States*, 175 F.2d 384, 388 (8th Cir.), *cert. denied*, 338 U.S. 873, 70 S.Ct. 143, 94 L.Ed. 535 (1949), this Court stated:

. . . a trial judge, in formulating his charge, is entitled to use his own language and is not required to let counsel for either party put words into his mouth. If the charge is accurate and gives to the jury all of the law which it needs in order to reach a verdict, that is enough.

A more recent decision on the topic of denying requested instructions is *United States v. Brown*, 540 F.2d 364, 380 (8th Cir. 1976), in which this Court stated:

Even if the requested instruction is proper and in form suitable for use by the court, the court retains discretion in framing the instruction; it is therefore sufficient that the charge to the jury adequately and correctly covers the substance of the requested instruction.

Although the trial court did not give the requested Instruction No. 1, the court did charge the jury with an instruction which quite clearly set out the necessary knowledge required of a defendant who is charged with fraud. Therefore, the Court properly denied the appellant's original Instruction No. 1, and his modified Instruction No. 1.

■ Defendants also objected to other instructions:

A. That the Court failed to instruct on fraud.

A review of the trial transcript shows that counsel for the appellants failed to offer a requested instruction on fraud. Also, counsel for the appellants did not object to the Court's instruction relative to fraud, either in chambers or after the charge was given to the jury as is required by Rule 30 of the Federal Rules of Criminal Procedure.[4] The Court's reading of the Indictment included the phrase "knowingly unlawfully converted and taken by fraud." In *United States v. Cacioppo*, 517 F.2d 22, 23 (8th Cir. 1975), the Court held that:

Federal Rule of Criminal Procedure 30 provides in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Here the defendant admits that no objection was made to the

---

4. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objec-

tion. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

portion of the charge he now alleges to be erroneous. This omission "renders the instruction unassailable on review in the absence of plain error." *United States v. Lawson*, 483 F.2d 535, 537 (8th Cir. 1973), *cert. denied*, 414 U.S. 1133, [94 S.Ct. 874, 38 L.Ed.2d 757] . . . . (A recent case following the above holding is *United States v. Bennett*, 563 F.2d 879, 882 (8th Cir. 1977)).

Since the jury was, on at least three occasions, introduced to the phrase "taken by fraud," they were informed, and therefore presumably aware of its relationship to the remainder of the allegations. A jury using its common experiences is quite capable of understanding what the term "taken by fraud" means. This Court finds no error in the Court's failure to instruct as to the elements of fraud.

As for the two remaining sub-arguments, i. e.:

B. The Court erred in misdefining the word "willfully" in its instructions; and

C. Erred in its failure to instruct on "specific intent."

Again counsel failed to raise timely objection to the instructions as given and cannot now raise those issues.

■ The appellants also argued:

ARGUMENT V

COURT ERRED IN FAILURE TO SUSTAIN DEFENDANTS' MOTION TO DISMISS COUNT III BASED ON DUPLICITY AND IMPERMISSIBLE VAGUENESS

A. SUBMISSION OF GENERAL CHARGE TO THE JURY DIDN'T PRECLUDE VERDICT ON UNSUPPORTABLE CHARGES OF CONCEALING AND STORING UNDER 18 U.S.C. § 2315.

B. GIVING OF A GENERAL VERDICT INSTRUCTION ON COUNT III AND REFUSAL TO REQUIRE SPECIFIC VIOLATION FINDINGS UNDER 18 U.S.C. § 2315 DID NOT PRECLUDE A LESS THAN UNANIMOUS VERDICT ON THE ONE DEFINITE CHARGE.

The statutory language of 18 U.S.C. § 2315 is clearly disjunctive as shown by the following quote:

Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, merchandise . . . ."

The Court in *Rimerman v. United States*, 374 F.2d 251 (8th Cir. 1967), held that:

. . . it has been long settled that where a crime is denounced disjunctively in the statute but charged conjunctively in the indictment, proof of any one of the allegations will sustain a conviction. As stated in *United States v. Conti*, 361 F.2d 153, 158 (2nd Cir. 1966):

"Charging alternative ways of violating a statute in conjunctive is permissible, and a conviction under such an indictment will be sustained if the evidence indicated that statute was violated in any of the ways charged. *Smith v. United States*, 234 F.2d 385 (5th Cir. 1956)."

Therefore, Argument V is rejected.

■ The appellants' Sixth Argument is that the Court erred in refusing defendants' motion for mistrial or alternatively for a cautionary instruction following testimony regarding a lie detector test.

The appellants stress that according to the general case law, and specifically *United States v. Alexander*, 526 F.2d 161 (8th Cir. 1975), polygraph results may not be presented to the jury except by consent of both parties.

The case before this Court does not involve testimony relating to polygraph results. The witness merely made the unsolicited statement that his company gave Leisinger a lie detector test. The trial court refused to grant both the motion for mistrial and the request for a cautionary instruction. It would appear that in denying the request, the Court was attempting to avoid any amplification of jury awareness of what was *almost* stated by the witness, i. e., test results. Therefore, the trial judge kept at a minimum any prejudicial effect that the brief unsolicited statement may have had on the jury.

Appellants further argue that the statement concerning a lie detector test, followed by testimony alluding to the fact that because of grain shortages Leisinger was fired, resulted in the jury assuming any lie detector test given to Leisinger must have been failed. Whether or not the jury received such an impression is moot in light of the fact that Leisinger testified in great detail as to how he, along with others, caused the grain shortage.

The refusal to grant a mistrial or give a cautionary instruction was not prejudicial error.

There being no merit in any of the appellants' arguments, the convictions are affirmed.