UNITED STATES of America, Plaintiff-Appellee,

v.

Louis Fernando GOMEZ, Jr., Defendant-Appellant.

No. 79–1626.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 18, 1980.

Decided Jan. 9, 1981.

Rollie R. Rogers, Denver, Colo., (Ted L. Hansen, Denver, Colo., with him on the brief), for defendant-appellant.

Nancy E. Rice, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with her on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

PER CURIAM.

Louis Gomez appeals from his jury conviction for conspiracy to possess stolen mail matter in violation of 18 U.S.C. §§ 1708 and 371.

The primary issues on appeal are whether the trial court erred in overruling defendant's motion for judgment of acquittal based on the contention that the government failed to prove that the material had been mailed, and also in allowing testimony of several merchants concerning the passing of forged checks by an individual other than appellant.

The indictment charged Louis Gomez, his son, Robert Gomez, Allen Harwood, an unindicted coconspirator, and others with conspiring to possess the contents of a package which had been mailed to a Ronald Jeffrey. The package contained two hundred personal checks for the account of Jeffrey which he had ordered from his bank. The indictment alleged that the named persons had acted with knowledge that the checks had been stolen and charged as part of the conspiracy that Louis Gomez knowingly furnished false identification to Harwood for use in passing the checks. Also, that he arranged for Harwood to forge and pass several of the checks to various shopkeepers. Many of the items so purchased were seized and admitted into evidence over appellant's objection.

The government presented the testimony of several of the defrauded merchants who identified the checks and merchandise, and identified Harwood as the person who passed the checks. Harwood testified that appellant offered him compensation to pass bad checks. Harwood described how defendant Gomez planned the scheme and acted as the lookout while Harwood negotiated the checks. He also testified that he would return the checks and identification to defendant Gomez until needed again. Harwood identified the checks and the merchandise. When asked if he knew where these checks came from, he responded:

"A  Louie [Gomez] had said that they were—it was a malfunction with the Postal Service. They had put them in the wrong mailbox.

.   .   .   .   .

"Q  . . .  Did Louie tell you what mailbox it had been put into?

"A Yes. It had been mistakenly put into Joseph Martinez' mailbox."

A basic issue on appeal is whether the government proved that the checks had been mailed. Ronald Jeffrey's testimony was that he had applied for the checks from his bank; had given his mailing address to the bank clerk; and that he did not receive the checks. The bank clerk explained that in the ordinary course of business new checks are mailed to the customer's address by the printers of the checks. The local plant manager for the printer described his firm's customary procedure with respect to orders for personal checks. He established that the company always mailed orders for packages of 200 personal checks, and would send charge slips to its Kansas City office from which each customer would be billed for the checks ordered. From his examination of the company bill or charge slip for checks shipped July 22, 1977, the manager concluded that Jeffrey's checks had indeed been mailed on that date.

■ The use of the mails like most other facts may be established by circumstantial evidence. *United States v. Baker*, 444 F.2d 1290 (10th Cir.). In *Webb v. United States*, 347 F.2d 363 (10th Cir.), this court found the evidence sufficient to support the finding that a state welfare check had been placed in the mails. We said in *Webb*:

"We have no doubt that the proof of the routine procedures of the Oklahoma Welfare Department in the preparation and mailing of welfare checks is sufficient to support a permissible inference that this particular check reached the United States mails. It is true that the testimony relating to mailing does not single out the particular check in any manner nor does it negate all possibilities that might strip appellant's possession of the check of its criminal aspects. But the jury's function is broad enough to allow it to make common sense inferences from proven facts and the burden of the government in this type of case does not require it to negate all unlikely but possible facts of innocence. See *United States v. Zimple*, 7 Cir., 318 F.2d 676, cert. de-

nied, 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed.2d 95. Appellant's possession and cashing of the check was tainted with guilt and not consistent with innocence under all the circumstances of this case. We hold the evidence sufficient to support the judgment."

■ In the instant case the relevant information was from records kept in the usual course of business. The record was a copy of a billing list which was prepared daily for the purpose of charging customers for checks mailed that day. Although it is not an actual shipping document it does tend to prove, given its manner of preparation, the fact of mailing. This evidence with the other circumstances was sufficient to establish that the checks had been mailed. *See United States v. Bloom*, 482 F.2d 1162 (8th Cir.); *United States v. Gardner*, 454 F.2d 534 (9th Cir.); *United States v. Powell*, 453 F.2d 885 (6th Cir.).

Additionally, the government presented testimony which showed appellant's knowledge that the checks were stolen. As mentioned, defendant Gomez admitted to Harwood that he understood the checks had been improperly delivered by mail to a relative's house which was two doors from Jeffrey's residence. The statement of defendant Gomez, with the corroborating evidence mentioned above, thus provide sufficient facts from which the jury could properly conclude that the checks were mailed.

Appellant contends he was prejudiced by the cumulative testimony of several merchants who identified Harwood as the person who passed some of the Jeffrey checks, but whose testimony did not connect appellant with his activity. These witnesses identified the checks which were passed and explained the sales. The testimony apparently was used primarily to corroborate Harwood's version of the arrangement, and his testimony did indeed establish appellant's involvement.

■ This use of the checks was charged as an overt act of the conspiracy charged in the indictment. The defendant's involvement in a forgery scheme is admissible evi-

dence as it is an integral part of the underlying offense for which he was charged. *See, e. g., United States v. Weatherford,* 493 F.2d 248 (8th Cir.) (possession of stolen mail charged).

The judge properly instructed the jury as to the caution it should take in assessing an accomplice's testimony.

We have considered appellant's other contentions and find them to be without merit.

AFFIRMED.