**UNITED STATES of America, Appellee,**

v.

**Thomas W. SCOTT, Appellant.**

**No. 81–1702.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Dec. 31, 1981.

---

Mark S. Cambiano, argued, Morrilton, Ark., for appellant, Thomas W. Scott.

George W. Proctor, U. S. Atty., Terry L. Derden, argued, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and REGAN *, Senior District Judge.

REGAN, Senior District Judge.

Thomas W. Scott was convicted by a jury on one count of conspiracy to violate 18 U.S.C. § 1341 (the mail fraud statute) and two counts of mail fraud. He was sentenced to two years imprisonment on each charge. Execution was suspended on the mail fraud counts with two years probation on each to run concurrently with each other and consecutive to the conspiracy sentence.

* John K. Regan, Senior District Judge, Eastern District of Missouri, sitting by designation.

This appeal is from the order of the district judge overruling defendant's motion for a new trial.[1]

At the times involved, Scott was the elected county judge and ex officio road commissioner of Conway County, Arkansas. As part of his duties, he would purchase gear lubricant and approve for payment out of county funds claims for the purchase price of the gear lubricant as shown on the seller's invoices. Based on such approval, a warrant would be issued for payment of each claim and mailed or otherwise delivered to the seller.

The evidence was amply sufficient to warrant the finding of the jury that Scott and Louis R. "Joe" Spilka entered into an arrangement whereby Scott, on behalf of Conway County, from time to time would and did purchase gear lube from Spilka at greatly inflated prices, and as part of their arrangement, Spilka would and did submit invoices (the claims on which Scott would and did approve) some of which were "padded" as to quantities and others of which were bogus, on the basis of which Spilka would and did pay Scott a stipulated "commission" or kickback on the purchase from Spilka and a percentage of the prices charged on his bogus and fictitious invoices.

Appellant challenges (1) the admission of evidence of other crimes, (2) evidence of overt acts barred by limitations, (3) the failure of the Government to inform defendant that a Government witness was to be indicted for perjury, and (4) the sufficiency of the evidence. We find no error and affirm the convictions.

As part of the Government's case, David Herndon, a salesman for Central Lumber Enterprise, a broker of lumber and culvert, testified that at the direction of his employer he delivered to Scott an envelope containing a hundred dollar bill, following which Scott left his office and obtained for Herndon a warrant in payment of an invoice due Central Lumber Enterprise for culvert which Scott had purchased for Conway County. Herndon specifically testified that the cash payment was not a condition of his getting the warrant. There was no evidence as to the purpose or reason the cash payment was given to Scott.

■ Based primarily on this single equivocal payment by Herndon, appellant argues at length that the court improperly admitted evidence of "other crimes." We have no doubt that the Government had hoped Herndon would testify to a kickback scheme similar to the one with Spilka alleged in the indictment as bearing on the issue of intent. However, absent testimony by Herndon or any one else of an understanding or agreement, express or implied, that the money was to be paid in return for purchasing merchandise from Central Lumber Enterprise, the testimony falls far short of constituting evidence of another crime. We note that immediately before Herndon testified, and again at the conclusion of his direct testimony, the court cautioned the jury that Herndon's testimony should not be considered on the issue of Scott's guilt or innocence.[2] At worst, the evidence was irrelevant, but not prejudicially so.

1. Appellant's brief states that the appeal is from the judgment and order entered May 20, 1981, which is the date on which the judgment and commitment were entered. However, the only notice of appeal filed by appellant is from the order entered on June 24, 1981, which is the date the district court overruled appellant's motion for a new trial. We elect to treat the notice of appeal as from the judgment of conviction as well.

2. In his charge to the jury the court cautioned them at length:

"Evidence or testimony that an accused committed an act at one time or on one occasion is not evidence or proof whatever that such person did a similar act at another time or on another occasion.

In other words, testimony that a defendant may have committed, at some other time, an act similar to the act or acts alleged in the indictment in this case, may not be considered by the jury in determining whether the accused in fact committed any act alleged in the indictment.

Indeed, evidence or testimony concerning an act of a similar nature allegedly committed at some time or place not charged in the indictment may not be considered for any purpose whatsoever, unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt

Appellant further argues that evidence of kickbacks which had been alleged as overt acts in the conspiracy count should not have been admitted, on the theory that prosecution thereon as substantive offenses would be barred by limitations, and that this "other crimes evidence" is wholly dissimilar to the bogus and padded invoice crimes charged in the substantive counts.

■ Count I of the indictment, supported by the evidence, charged a continuing conspiracy between Scott and Spilka commencing in February, 1973, and continuing to the end of 1976 to devise a scheme to obtain money by false pretenses from Conway County and to defraud Conway County and its citizens by depriving them of their right to have the county's business conducted honestly and impartially and free of favoritism and corruption. The fact that a number of the overt acts performed in furtherance of the conspiracy were committed beyond the statute of limitations does not preclude the admission in evidence of such acts to show the nature of the scheme and Scott's intent when the later use of the mails occurred. Cf. *U.S. v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975). And see *U.S. v. Andreas*, 458 F.2d 491 (8th Cir. 1972).

Appellant argues that inasmuch as he denied taking the bribes, there was no genuine issue of intent and knowledge, thus (so he contends) distinguishing this case from authorities cited by the Government[3] in which the defendant admitted the act of taking money or property but denied fraudulent intent. We note, however, that in *U.S. v. Adcock*, 558 F.2d 397 (8th Cir. 1977), the defendant denied taking any money, but similar acts of evidence was held properly admitted to establish intent or a possible scheme or plan.

Appellant's reliance on *U.S. v. O'Connor*, 580 F.2d 38 (2nd Cir. 1978) is misplaced. That case involved the prosecution of a federal official for taking bribes from certain packing plants in connection with the performance of his official duties as a meat inspector. He was not charged with mail fraud or conspiracy or a scheme to defraud the Government. The defendant denied taking any bribes. The Second Circuit held that under the circumstances of that case the district court erred in permitting the introduction of other crimes evidence to the effect that the defendant had received regular weekly payments from the owners of other, unrelated, packing plants. The Court commented that the evidence was prejudicial in that it painted the picture of the defendant as a person who frequently committed crimes and distorted the emphasis at trial from the specific crimes covered by the indictment to those not so charged.

No comparable situation is here present. Not only was the evidence of the overt acts relevant in the proof of the conspiracy and scheme alleged in the indictment, but it bears upon appellant's intent and knowledge. *U.S. v. Adcock*, supra.

What appellant overlooks is that although he denied receiving kickbacks or other payments (per se, state and not federal offenses), he did not deny that he had approved for payment the warrants in payment of the invoices in question, the mailing of which constituted the overt acts. Thus, the intent with which Scott acted in approving the warrants for payment and his knowledge of the fraudulent nature of the invoices were very much in issue.

that the accused did the particular act charged in the particular count of the indictment under deliberation.

On the other hand, if the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged in the indictment, then the jury may consider evidence of some other act of a similar or like nature on the part of the accused, in determining the state of mind or intent with which the accused did the act charged in the indictment.

And where proof of an alleged similar act done at some other time or place is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the indictment, the accused acted willfully and not because of a mistake or accident or some innocent reason."

3. For example, *U.S. v. Prionas*, 438 F.2d 1049 (8th Cir. 1971); *U.S. v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978); and *U.S. v. Semaan*, 594 F.2d 1215, 1217 (8th Cir. 1979).

■ Appellant further contends that the evidence was insufficient to establish the use of the mails. We do not agree. Spilka testified that he received all of the twenty warrants alleged in the indictment through the mails, and that each of them was mailed from Morrilton, Arkansas to Spilka's post office box in Germantown, Tennessee. This was in accordance with Spilka's normal business practice. He would regularly pick up his mail at the box and then deposit all the checks and warrants therein at his bank in Memphis (several hundred miles from Morrilton, the county seat of Conway County).

In part, the County Clerk's records expressly corroborated Spilka. These showed that several of the warrants had been mailed to Spilka. As for the others, the records were silent as to whether the warrants had been mailed or picked up. However, it is clear that each of them was deposited in Spilka's bank account.

There is no evidence contradictory of Spilka's testimony as to the mailings. Appellant's attack on the mailings is a general blunderbuss one, without differentiating between the three counts of the indictment, on each of which he was convicted and sentenced. On cross-examination, Spilka testified:

"A   To the best of my recollection, every check I ever got from Conway County, to my knowledge, was sent through the mails.

Q   But you don't know if they had been through the mails?

A   Well, they appeared at my Post Office box. I assume they came through the mails."

The only specific warrant, the mailing of which appellant questioned in terms, was No. 2750, in payment of a padded invoice (the subject of Count II of the indictment). As to this warrant, Spilka insisted that it came through the mails, as was the normal practice, but that simply by looking at it he couldn't say "specifically" that it came through the mails and that it was "possible that it might not have gone through the mails."

■ It is well settled that use of the mails, like most other facts, may be established by circumstantial evidence. *U.S. v. Gomez*, 636 F.2d 295, 297 (10th Cir. 1981); *Petschl v. U.S.*, 369 F.2d 769, 772 (8th Cir. 1966); *U.S. v. Moore*, 555 F.2d 658, 660 (8th Cir. 1977); and *U.S. v. Cady*, 567 F.2d 771, 775 (8th Cir. 1977). And evidence of customary office practice and procedure supports a finding of mailing. *U.S. v. Gomez*, supra; *U.S. v. Ziperstein*, 601 F.2d 281, 295 (7th Cir. 1979); and *U.S. v. Flaxman*, 495 F.2d 344 (7th Cir. 1974).

Appellant argues that inasmuch as Spilka, the principal witness for the Government, was a convicted felon and an admitted perjurer, the conviction based on his testimony should not be allowed to stand. Spilka had been convicted on his plea of guilty to bribing a number of county judges. He had admittedly perjured himself by denying to a grand jury that he had made payments to the county judges. His conviction and perjury resulted from his earlier attempts to cover up his guilt and that of the county judges who had solicited and accepted his bribes.

■ It is well settled that the credibility of witnesses is exclusively for the jury. *U.S. v. Wofford*, 562 F.2d 582, 587 (8th Cir. 1977); *U.S. v. Miller*, 543 F.2d 1221, 1223 (8th Cir. 1976); and *U.S. v. Dunmore*, 446 F.2d 1214, 1219 (8th Cir. 1971). So, too, a conviction can rest on the testimony of an accomplice or conspirator, even if uncorroborated. *U.S. v. Guy*, 456 F.2d 1157, 1161 (8th Cir. 1972); *U.S. v. Cady*, 567 F.2d 771, 774 (8th Cir. 1977); and *U.S. v. Micciche*, 525 F.2d 544, 546 (8th Cir. 1975). The jury was adequately instructed as to the effect of a prior conviction and the admission of perjury in weighing the testimony of a witness. Spilka's testimony was straightforward and unequivocal. If credited, it was sufficient, together with the other evidence, to support the jury's verdict.

■ Finally, appellant argues that the district court erred in overruling that portion of his motion for a new trial grounded on the contention that the Government

knowingly used perjured testimony by witness Thompson and failed to disclose to defendant the fact that prior to his testifying a suppressed indictment for perjury and bribery had been returned against Thompson.

Thompson, the father-in-law of Spilka, was the owner and custodian of the records of C & R Products Company from which Spilka purchased much of the gear lube he sold to Conway County. He identified and vouched for the accuracy of the records of C & R Products Company relating to shipments of gear lube to Conway County on behalf of Spilka. These records corroborated Spilka's testimony as to the quantities of merchandise shipped to Conway County, and were in turn corroborated by the records of the common carrier.

On June 1, 1979, almost two years before Scott was tried, Thompson was tried and acquitted by a jury of a charge of perjury based on his testimony before a grand jury that he had never paid any bribes or kickbacks to any Arkansas county officials. The testimony at Thompson's trial centered on whether he had paid kickbacks to the county judge of St. Francis County. Subsequently, on May 18, 1981, Thompson was again indicted. This second indictment charged Thompson with having paid kickbacks to the county judges of Clay and Poinsett Counties and with having perjured himself during his earlier trial. The return of the second indictment was not disclosed prior to Scott's trial.

There is not a scintilla of evidence supportive of appellant's charge that Thompson's testimony as to the accuracy of his company's records were perjurious, much less that the Government knew that such testimony was false. Certainly, the fact of Thompson's indictment on charges unrelated to Conway County not only was not material to the charge against Scott, but could not have been used even to impeach Thompson's testimony that his company's records pertaining to shipments to Conway County had been falsified. In any event, the district court did not abuse his discretion in denying Scott a new trial under the standards of either U.S. v. Runge, 593 F.2d 66 (8th Cir. 1979) or U.S. v. Ward, 544 F.2d 975 (8th Cir. 1976). There is an entire absence either of perjured testimony or of prosecutorial misconduct which could conceivably have affected the truth-seeking function of the trial process.

The convictions are affirmed.