**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 16 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TELMA L. HARDISON,

    Plaintiff-Appellant,

v.

BALBOA INSURANCE COMPANY,

    Defendant-Appellee.

No. 00-6100

(D.C. No. 98-CV-1500-T)
(W.D. Okla.)

**ORDER AND JUDGMENT** [*]

Before **KELLY, BRISCOE,** Circuit Judges, and **MURGUIA** , District Judge [**].

Plaintiff Telma L. Hardison appeals a district court order granting summary

judgment to defendant Balboa Insurance Company in this diversity action arising

from Balboa's denial of coverage after a tornado damaged Hardison's home. We

have jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Carlos Murguia, United States District Judge, District of
Kansas, sitting by designation.

[1] Although Hardison filed her notice of appeal prior to a final resolution of
her claims against defendants United Companies Lending Corporation and United

(continued...)

I.

Hardison purchased a house in Oklahoma City, Oklahoma, with a loan provided by United Companies Lending Corporation and serviced by United Companies Financial Corporation (collectively, the United Companies). She subsequently defaulted on the loan and failed to maintain insurance as required by the terms of the loan. After the United Companies instituted a foreclosure action, Hardison filed bankruptcy. In November 1996, the United Companies exercised their contractual right to "force place" a fire insurance policy on the home to protect their interest in the property. Balboa provided the force placed policy, which named the United Companies as the insured. The policy was cancelled in November 1997 by the United Companies without explanation, and in June 1998 a tornado damaged Hardison's home. She filed a claim for coverage, which Balboa denied on the ground that the force placed policy had been cancelled before the tornado struck.

Contending cancellation of the policy was ineffective because she never received notice, Hardison sued Balboa in federal court, alleging that Balboa's failure to provide coverage constituted a bad faith breach of insurance contract,

(...continued)
Companies Financial Corporation, we have jurisdiction because the district court granted certification under Rule 54(b) of the Federal Rules of Civil Procedure. See Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645 (10th Cir. 1988) (en banc).

2

and violated the Oklahoma Consumer Credit Code, Okla. Stat. tit. 14A, §§ 4-107, 4-304. She also asserted these claims and two federal causes of action against the United Companies. In addition, she alleged in an amended complaint that Balboa was vicariously liable for the United Companies' alleged wrongful cancellation of the policy. Finally, although it does not seem to appear in the amended complaint, Hardison argued in the district court that she was asserting a claim that Balboa was liable for failing to procure insurance.

The district court dismissed Hardison's Oklahoma Consumer Credit Code claims, stayed the action as to the United Companies because they filed bankruptcy, and granted Balboa's motion for summary judgment. The district court certified its grant of summary judgment as a final judgment, immediately appealable pursuant to Federal Rule of Civil Procedure 54(b).

## II.

We review a summary judgment order de novo, considering the evidence and drawing reasonable inferences therefrom in the light most favorable to the nonmoving party. Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000). We review the district court's evidentiary rulings on summary judgment for an abuse of discretion. N. Tex. Prod. Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800, 813 (10th Cir. 2000). Our role in this diversity action "is to ascertain and apply state law to reach the result the Oklahoma Supreme Court

3

would reach if faced with the same question." Shugart v. Cent. Rural Elec.

Coop., 110 F.3d 1501, 1504 (10th Cir. 1997) (internal brackets and quotation

marks omitted). We review the district court's determination of state law de

novo. Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991).[2]

## III.

Bad Faith Breach of Insurance Contract Claim

Hardison contends the district court erred in granting summary judgment on

her bad faith breach of insurance contract claim. Under Oklahoma law, "an

insurer has an implied duty to deal fairly and act in good faith with its insured."

Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1978). A

violation of this duty, often referred to as a bad faith breach of insurance contract,

gives rise to a tort action and liability may be imposed when "there is a clear

showing that the insurer unreasonably, and in bad faith, withholds payment of the

claim of its insured." Id. at 905.

---

[2] Balboa points to four of our earlier decisions in arguing we should give deference to the district court's interpretation of Oklahoma law. See Appellee's Br. at 8 ("The views of a resident district judge on the unsettled law of his state are persuasive and ordinarily accepted.") (citing Jorgensen v. Meade Johnson Labs., Inc., 483 F.2d 237, 239 (10th Cir. 1973); Sade v. N. Natural Gas Co., 483 F.2d 230, 234 (10th Cir. 1973); Binkley v. Mfrs. Life Ins. Co., 471 F.2d 889, 891 (10th Cir. 1973); Vaughn v. Chrysler Corp., 442 F.2d 619, 621 (10th Cir. 1971)). As we explained in Steiner Corp. v. Johnson & Higgins of California, 135 F.3d 684, 690 (10th Cir. 1998), however, our earlier opinions affording deference to a district court's determination of state law were implicitly rejected by the Supreme Court's decision in Russell and therefore lack any continuing precedential force.

Relying on Smith v. National Bank of McAlester, 575 P.2d 975 (Okla. Ct. App. 1977), the district court entered summary judgment on the bad faith claim after concluding Balboa had no duty under Oklahoma law to notify Hardison of the United Companies' cancellation of the force placed policy. In Smith, the court held that the defendant mortgagee had no legal obligation to notify the plaintiff mortgagor that an insurance policy covering her home, which was payable to the bank in the event of loss, had been cancelled by the insurance company several years before a fire destroyed the home. The district court apparently interpreted Smith to mean that a party who does not initiate the cancellation of a policy payable to the mortgagee need not notify the mortgagor of the cancellation. Because it was undisputed in this case that the United Companies cancelled the force placed policy, under which they were the named insured, the district court held that Balboa had no legal duty to notify Hardison of that cancellation. Alternatively, the district court held that even if there was such an obligation, the evidence in the record demonstrated that Balboa mailed notice to Hardison.

Hardison's arguments regarding her bad faith claim are unclear. Although she tries to distinguish Smith from the facts of this case, she does not directly assert that Balboa is liable for bad faith breach of insurance contract simply because it allegedly violated a legal duty to notify her that the United Companies

5

cancelled the force placed policy. Instead, it appears Hardison is arguing that Balboa is liable because it denied coverage based on a cancellation that, she says, was legally ineffective without such notice. Next, she asserts the evidence that Balboa offered to show mailing of notice was inadmissible. Finally, Hardison appears to argue that even if the evidence was admissible, it does not unequivocally demonstrate that Balboa mailed her notice of the cancellation.

*Cancellation ineffective without notice*

Hardison relies on two Oklahoma statutes to argue that cancellation of the force placed policy was legally ineffective under state law without notice to her. One such statute is found in the Oklahoma Insurance Code, which sets forth the following "standard fire insurance policy" cancellation provision adopted by the Oklahoma Legislature:

> Cancellation of policy. This policy shall be canceled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy refund the excess of paid premium above the customary short rates for the expired time. *This policy may be canceled at any time by this Company by giving to the insured a five days' written notice of cancellation* with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

Okla. Stat. tit. 36, § 4803(G) (emphasis added). According to Hardison, because this cancellation provision was incorporated by the force placed policy, under

6

which she asserts she was an additional insured, five days' advance written notice to her that the United Companies were canceling the policy was required before the cancellation could legally take effect.

Hardison's reliance on section 4803(G) is misplaced for several reasons. First, the force placed policy's termination provision does not incorporate the exact language set forth in that section. The termination provision states in pertinent part that "[t]his Policy may be cancelled by the Named Insured [the United Companies] at any time by giving written notice stating when thereafter such cancellation shall be effective. *This Policy may be cancelled by the Company [Balboa] by giving at least sixty (60) days advance written notice of such intent to cancel this Policy*." Appellant's App. at 79 (emphasis added).[3] Second, regardless of whether we look to the five-day cancellation provision of section 4803(G) or the sixty-day cancellation provision of the force placed policy, the advance notice requirement plainly applies only when the *insurer* is the party canceling the policy. In this case, there is no dispute that the United Companies cancelled the force placed policy, and we reject Hardison's argument that a named

---

[3] Although the force placed policy adopts "all provisions and stipulations in the attached Standard Fire Policy," Appellant's App. at 79, the attached standard fire policy contains cancellation terms that differ from section 4803(G), id. at 88-89, apparently as allowed by Okla. Stat. tit. 36, § 4803(F). The attached policy's cancellation terms are, in turn, superseded by the "Termination" provision of the force placed policy, as authorized by the "Standard Fire Insurance Policy" provision of the force placed policy. Appellant's App. at 79.

7

insured cannot cancel the policy without first obtaining the consent of any additional insureds.  Third, nothing in the policy language indicates that Balboa was required to notify Hardison of the cancellation.  Therefore, neither the terms of section 4803(G) nor the termination provision of the force placed policy provides that a cancellation would be legally ineffective unless Hardison first received notice of that cancellation.

The second statute upon which Hardison relies is the following section of the Oklahoma Consumer Credit Code:

> A creditor shall not request cancellation of a policy of property or liability insurance except after the debtor's default or in accordance with a written authorization by the debtor, and in either case *the cancellation does not take effect until written notice is delivered to the debtor or mailed to him at his address as stated by him*.  The notice shall state that the policy may be canceled in accordance with the terms and conditions of the policy.

Okla. Stat. tit. 14A, § 4-304 (emphasis added).  According to Hardison, cancellation of the force placed policy was ineffective under section 4-304 because written notice was never delivered to her nor mailed to her residence.

Balboa does not dispute that section 4-304 applies in this case;[4] instead, it

---

[4] During oral argument, Balboa suggested for the first time on appeal that section 4-304 is inapplicable here because that section only "applies to loans the primary purpose of which is the financing of insurance."  Okla. Stat. tit. 14A, § 4-102(2).  Although we may properly consider a new argument that presents an alternative ground for affirming a lower court ruling on a pure question of law, Stahmann Farms, Inc. v. United States, 624 F.2d 958, 961 (10th Cir. 1980), the

(continued...)

8

argues that the statute places the responsibility for giving notice squarely on the "creditor," i.e., the United Companies, rather than the insurer, i.e., Balboa. This argument, however, reveals an apparent misunderstanding of Hardison's theory of liability. As we read Hardison's trial and appellate briefs, she is alleging that Balboa acted in bad faith not because it had a legal obligation to give her notice of the cancellation, but because it denied coverage based on a cancellation that was legally ineffective absent such notice under section 4-304, regardless of whether the notice should have been given by the United Companies or Balboa. Therefore, because Balboa does not question the applicability of section 4-304 to this cancellation, the only relevant issues concerning the bad faith claim are whether the evidence of notice was admissible, and whether there is a genuine issue of fact that the notice was actually mailed to Hardison.

*Admissibility of evidence of notice of cancellation*

In support of its motion for summary judgment, Balboa presented various evidence to show that it mailed Hardison a cancellation notice around the time the United Companies cancelled the force placed policy. The evidence included

---

(...continued)
decision whether to resolve a newly raised issue is left to our discretion, and that decision is based on the facts of each case, Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1229 (10th Cir. 1996). Here, we decline to address a contention that was raised for the first time during oral argument.

9

computer-generated reproductions of two separate original cancellation notices allegedly mailed to Hardison, a template used to generate one of those notices, computer printouts which allegedly reflected that Balboa mailed Hardison a cancellation notice, and an affidavit by Sharon Paolino, Balboa's Vice-President of Tracking Operations, explaining how the computerized records regarding the force placed policy covering Hardison's home were processed and maintained. In addition, the record contains Balboa's answers to Hardison's interrogatories, which provide extensive information concerning Balboa's computer record keeping system and which are properly verified by two Balboa employees.[5]

On appeal, Hardison challenges the admissibility of several of these items under the Federal Rules of Evidence. Although she fails to clearly explain her specific contentions, Hardison seems to assert (1) that the computer-generated documents, including the reproduced cancellation notices, were not properly authenticated under Rule 901; (2) that Balboa did not lay a proper foundation for the admission of the computer-generated documents under the business record hearsay exception of Rule 803(6); and (3) that the reproduced cancellation notices are too different from the original computer templates to be admissible as duplicates under Rules 1001(4) and 1002.

---

[5] A third verification attached to Balboa's answers to interrogatories is signed but not notarized. Appellant's App. at 183.

The district court did not abuse its discretion in holding that the documents in question were properly authenticated. "Rule 901(b)(1) provides that a witness with knowledge may authenticate evidence by testifying that a matter is what it is claimed it be." United States v. Henry, 164 F.3d 1304, 1309 (10th Cir. 1999). Here, Rule 901(b)(1) was satisfied by Balboa's verified interrogatory answers, which identify the reproduced cancellation notices as copies of the original notices allegedly mailed to Hardison, and by the Paolino affidavit, which identifies the remaining computer-generated documents as records that were produced and maintained in the regular course of Balboa's business activity.

Nor was there any abuse of discretion in concluding that the computer-generated documents were admissible pursuant to the business record hearsay exception of Rule 803(6). Computer business records are admissible under Rule 803(6) "if the offeror establishes a sufficient foundation in the record for [their] introduction." United States v. Cestnik, 36 F.3d 904, 909 (10th Cir. 1994). According to Hardison, Balboa did not lay a proper foundation because neither Paolino nor the employees verifying Balboa's answers to interrogatories alleged personal knowledge of the creation of the computer-generated documents. While it is true that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," Fed. R. Evid. 602, "there is no requirement that the party offering a

11

business record produce the author of the item," <u>FDIC v. Staudinger</u>, 797 F.2d 908, 910 (10th Cir. 1986).  Instead, a foundation for the business record hearsay exception may be established by anyone who demonstrates sufficient knowledge of the record keeping system that produced the document.  Here, Paolino satisfied this requirement through her affidavit, wherein she stated she was competent to testify about the computer system that created the documents and she explained how data was entered and retrieved from the computer system.

As for whether the reproduced cancellation notices are too different from the original templates to be admissible as duplicates under Rules 1001(4) and 1002, we need not resolve this issue because Hardison did not raise it in the district court.  See <u>FDIC v. Noel</u>, 177 F.3d 911, 915 (10th Cir. 1999) ("when a litigant fails to raise an issue below . . . and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review").[6]

*Sufficiency of evidence of mailing cancellation notice*

---

[6] Only one sentence in Hardison's response to Balboa's summary judgment motion mentions the requirement of original writings, and that sentence refers to a computer-generated reproduction of the original letter notifying Hardison that the United Companies were going to force place coverage for her home; it does not refer to the computer-generated reproductions of the original cancellation notices. Appellant's App. at 62 ("Clearly the document [the force placed policy notice] lacks the authenticity required by Fed. R. Evid. 901, is inadmissible hearsay under Fed. R. Evid. 802, and Balboa cannot justify the failure to produce an original as required by Fed. R. Evid. 1002.").

Hardison's final arguments concerning her bad faith breach of insurance contract claim relate to whether Balboa's evidence regarding the mailing of a cancellation notice properly supported summary judgment. Notably, it is not necessary for Balboa to prove that Hardison actually received notice of the cancellation. Rather, to sustain summary judgment on the bad faith claim, presuming that notice was necessary under Okla. Stat. tit. 14A, § 4-304 to effectuate the policy cancellation on which the denial of coverage was based, Balboa need only present undisputed evidence which demonstrates that it mailed a cancellation notice to Hardison. See Richardson v. Brown, 443 F.2d 926, 927-28 (10th Cir. 1971) (where insurance company strictly complies with policy terms relating to cancellation, including mailing insured a cancellation notice at address shown on policy, risk of non-receipt falls on the insured) (citing Midwestern Ins. Co. v. Cathey, 262 P.2d 434, 436 (Okla. 1953)).[7]

According to Hardison, under our unpublished order in State Farm Fire & Casualty Co. v. Van Horn, No. 97-5131, 1998 WL 58187 (10th Cir. Feb. 11, 1998), the evidence in the record was insufficient to show that Balboa actually mailed notice of cancellation to her. In Van Horn, a declaratory judgment action,

---

[7] Hardison argues that proof of receipt is required because Balboa did not strictly comply with the five-day advance notice of cancellation requirement of Okla. Stat. tit. 36, § 4803(G). As we have previously explained, however, that cancellation requirement is inapplicable to Hardison.

we held that a statement by a State Farm employee adequately demonstrated that State Farm mailed a cancellation notice that was allegedly never received by its insured homeowners. The employee testified that he "followed the customary procedures in mailing a cancellation notice to [the homeowners] whereby he checked the address, verified the postmark date, and presented the notice to a United States Postal Service official." Id. at *2. Though he could not recall mailing the specific cancellation notice to the homeowners, he testified that he never varied his routine of mailing cancellation notices and that his initials were on State Farm's copy of the notice, indicating that he mailed it. In this case, Hardison notes that Balboa never alleged that its employees personally followed customary procedures in mailing cancellation notices. She also argues that Balboa did not have a duplicate of the actual letter purportedly mailed to her, and there was no notation in either written or computer form to verify actual mailing of notice prior to the loss.

Notwithstanding Hardison's apparent belief to the contrary, Van Horn did not establish a "test" for determining whether an insurer properly mailed a notice of cancellation. Instead, we merely recognized that the undisputed facts in that case were sufficient to show that the insurer had mailed a cancellation notice to its insureds. We reach the same conclusion here. Although Hardison is correct that none of Balboa's employees testified about any steps they personally take to

14

mail cancellation notices, that is because Balboa sends its notices by computer. Indeed, Balboa's uncontradicted and verified interrogatory answers stated that once a force placed policy is cancelled, a computer-generated letter is automatically produced and sent to the homeowner, and "[t]here is no evidence that the handling of this file was not normal and in accordance with our procedures." Appellant's App. at 164.

Moreover, Hardison misstates the record when she claims "there is no duplicate or original of the actual letter purportedly mailed to [her] and no person's notation, whether written or in computer form, verifying actual mailing of any letter prior to the loss." Appellant's Br. at 24. To the contrary, the reproduced notices are attached to Balboa's summary judgment motion, and Paolino's affidavit explains how a particular notation in one of Balboa's computer printouts reflects that notice was sent to Hardison on October 30, 1997, long before Hardison's home sustained tornado damage in June 1998. Therefore, the district court properly concluded that the evidence in the record was sufficient to show that Balboa mailed Hardison notice of the cancellation.

Hardison also contends there are factual disputes in the record, but she does not clearly identify which facts are in dispute or how they relate to the issue of whether Balboa mailed her notice of cancellation. For example, she notes that one of Balboa's cancellation notices used the United Companies' letterhead, yet it

15

is not apparent how this created a genuine issue of fact as to whether notice was ever mailed. Similarly, she observes that the reproduced cancellation notices contain a disclaimer stating that the reproductions are based on information that may be different from when each document was originally sent, but again, it is not clear how this reveals a factual dispute concerning whether the notices were actually mailed. Finally, she makes much of the fact that Balboa changed its computer records at some point after cancellation of the force placed policy to more accurately identify the coverage on Hardison's home as "Forced Order Hazard" or "FOH" instead of "Lender Single Interest" or "LSI." Hardison seems to argue that this re-designation reveals a factual dispute as to whether the system ever produced an LSI cancellation letter for what was actually an FOH policy. Even assuming the initial coverage designation was incorrect, there is no evidence to indicate that Balboa's computer did not create and send a cancellation letter for whatever type of coverage was in effect at the time. The reproduced cancellation notices themselves state that the coverage on Hardison's home was cancelled; they do not identify the coverage as falling under an FOH or LSI policy. Accordingly, Hardison has failed to show a factual dispute on the issue of whether Balboa mailed her notice of the United Companies' cancellation of the

force placed policy covering her home.[8]

Vicarious Liability Claim

Hardison also contends that the district court erred in granting summary judgment on her claim that Balboa was vicariously liable under an agency or joint venture theory for the United Companies' purported wrongful cancellation of the force placed policy. "'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" Agee v. Gant, 412 P.2d 155, 160 (Okla. 1966) (quoting Farmers Nat'l Grain Corp. v. Young, 102 P.2d 180, 185 (Okla. 1940)). A joint venture, on the other hand, occurs when (1) two or more parties share a joint interest in property; (2) the parties agree to share the venture's profits and losses; and (3) the parties' conduct demonstrates cooperation in the venture. Gragg v. James, 452 P.2d 579, 586 (Okla. 1969). Here, the district court entered summary judgment in favor of

---

[8] In her reply brief, Hardison argues that the assertion in her affidavit that she never received a cancellation notice prior to her loss creates a factual dispute as to whether such notice was ever mailed. See Oaks v. Motors Ins. Corp., 595 P.2d 789, 792 (Okla. 1979) ("proof of no receipt . . . may raise an inference of nonmailing and thus serve to controvert insurer's alleged compliance with the policy provision that requires the mailing of notice"). Her failure to address this issue in her opening brief constitutes a waiver of that argument. See Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

17

Balboa on the vicarious liability claim because Hardison had not offered any evidence sufficient to show that Balboa and the United Companies were involved in either an agency or a joint venture relationship.

On appeal, Hardison unsuccessfully tries to demonstrate there are factual disputes as to whether Balboa may be vicariously liable for the United Companies' allegedly wrongful acts. For instance, she notes that a company called Insurance Automation Corporation (IAC) entered into a written agreement to provide the United Companies with insurance tracking and automation services "supported by underwriting contracts with the Balboa Insurance Company." Appellant's App. at 97. However, Balboa is not a signatory to the agreement, and Hardison does not offer any evidence to establish the legal relationship, if any, between IAC and Balboa. Hardison next points to a "General Agency Agreement" between Balboa and a company called United Plan Agency, Inc. (United Plan), but she again fails to offer any evidence that explains whether there is a legal relationship between United Plan and the United Companies. Hardison also relies on the fact that one of Balboa's cancellation notices used the letterhead and signature block of the United Companies' Escrow Department. However, this single document presents only a scintilla of evidence that, by itself, is insufficient to create a factual dispute as to whether there was an agency or joint venture relationship between Balboa and the United Companies under

Oklahoma law.  Compare S.W. Bell Media, Inc. v. Arnold, 819 P.2d 293 (Okla.

Ct. App. 1991) (holding factual dispute existed as to whether there was an agency

relationship between two telephone companies that used the same logo, had

similar names, and accepted contracts on behalf of each other).  Finally, she

points to evidence which tends to show that two United Plan employees may also

work for the United Companies and that one of Balboa's employees may also

work for IAC.  However, Hardison does not cite, and we have not found, any

Oklahoma case law which suggests that a joint venture may be established simply

by the fact that two companies employ the same person.[9]  The district court

properly granted summary judgment on Hardison's vicarious liability claim.

Failure to Procure Insurance Claim

As her final contention, Hardison asserts the district court erred in granting

summary judgment on her claim that Balboa is liable for the alleged failure of its

agent, United Plan, to procure insurance coverage for her home.  The Oklahoma

Court of Civil Appeals has recognized that "an insurance agent may be liable

under either contract or tort theories for failure to obtain insurance."  Swickey v.

---

[9] Hardison also notes that Wayne Bono, the President of United Plan and Balboa's agent, countersigned the force placed policy United Financial obtained for her home.  We fail to see the legal significance of this fact, given that Oklahoma law requires all insurance policies to be "countersigned by a licensed agent of the insurer."  Okla. Stat. tit. 36, § 627(A).

19

Silvey Companies, 979 P.2d 266, 268 (Okla. Ct. App. 1999). "In order to prevail on a claim for breach of contract to procure insurance, a plaintiff must show that the insurance agent agreed to procure insurance coverage effective as of a certain date and time, or of a certain breadth, and then failed to do so." Id. In contrast, the tort theory recognizes that "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and [that] an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Id. at 269. The district court did not expressly discuss this particular cause of action in its summary judgment order, but it is apparent that even if such a claim may lie against an insurer (as opposed to its agent), summary judgment is proper on this claim.

According to Hardison, United Plan had a duty to procure and maintain insurance coverage for her home following cancellation of the force placed policy, and Balboa is liable for its agent's failure to do so. Although Hardison does not clearly identify whether she is attempting to impose liability under a contract or tort theory, it is clear that liability under either theory occurs only where the insured has actually requested coverage from the agent. See Swickey, 979 P.2d at 268-69. In this case, Hardison does not offer any evidence to suggest that she ever communicated with, or sought insurance from, United Plan. Indeed, she admits that she did not even know Balboa had placed a policy on her home

20

until after she sought coverage for the tornado damage to her home.  Thus, we reject Hardison's argument that Balboa is not entitled to summary judgment on her failure to procure insurance claim.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge