2008 OK CIV APP 60

**June and John KUTZ,**
**Plaintiffs/Appellants,**

v.

**STATE FARM FIRE & CASUALTY**
**COMPANY and Jon Giddings,**
**Defendants/Appellees.**

**No. 105,562.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

May 23, 2008.

Jeff Martin, Jeff Martin & Associates, P.C., Tulsa, OK, for Plaintiffs/Appellants.

Galen L. Brittingham, John S. Gladd, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, OK, for Defendants/Appellees.

KENNETH L. BUETTNER, Presiding Judge.

¶1 Plaintiffs/Appellants June and John Kutz[1] appeal from summary judgment granted in favor of Defendants/Appellees State Farm Fire & Casualty Company and Jon Giddings (Agent).[2] The Kutzes sued State Farm and Agent for bad faith breach of contract after State Farm failed to defend John Kutz or pay his claim for liability for an auto accident because the policy insuring the vehicle had been canceled before the claimed loss occurred. The Kutzes asserted State Farm and Agent failed to notify them the policy was being canceled, and the Kutzes asserted Agent was negligent for failing to warn them before cancellation. The record shows no dispute of fact as to the claims against State Farm and Agent and we affirm.

¶2 John Kutz was involved in a collision, "which was probably his fault," while driving a 2003 Ford Excursion in November 2004. June Kutz had insured the vehicle with State Farm and the Kutzes made a claim under the policy. State Farm denied the claim, asserting that the policy on the vehicle had been canceled for non-payment of premium September 8, 2004. Based on its denial of coverage, State Farm did not defend John Kutz and the other driver obtained judgment against him.

¶3 The Kutzes contended that State Farm breached the insurance policy when it denied their claim, and that State Farm breached its duty of good faith in the way it canceled their policy, particularly by failing to send them a notice before cancelling the policy and by failing to send notice to the lien holder and to the Oklahoma Department of Public Safety.[3] The Kutzes added Agent as a party in their First Amended Petition. They claimed Agent negligently failed to discover their policy was being canceled and to warn them. They also claimed Agent breached an implied contract to notify them before the policy was canceled.

¶4 Agent sought dismissal on the grounds that he was not a party to the insurance contract between State Farm and the Kutzes; there was no basis for finding an implied contract; and the negligence claim was barred by the statute of limitations. State Farm sought summary judgment asserting the undisputed facts showed State Farm mailed a balance due notice to June Kutz but she failed to pay the premium balance; State Farm canceled the policy in

---

1. The pleadings and evidence indicate that the Kutzes have divorced and June Kutz has changed her last name to Blackman, but the style of the case has not been changed below and we refer to them here as the Kutzes. See Sup.Ct. Rule 1.25(B).

2. The trial court granted State Farm's Motion for Summary Judgment, and in another order granted Agent's Motion to Dismiss. However, the Kutzes attached evidentiary materials to their response to the Motion to Dismiss. We therefore treat the trial court's order in favor of Agent as one granting summary judgment. 12 O.S.2001 § 2012(B).

3. Title 47 O.S.2001 § 7–325 provides that in certain circumstances, a notice of cancellation of auto insurance is not effective unless also the notice is also filed with DPS. The Kutzes failed to submit evidence showing § 7–325 applies to them or their policy, and they appear to have abandoned this claim in their response to the motion for summary judgment.

accordance with the policy terms; and the Kutzes did not have liability insurance applicable to the November 2004 accident. State Farm also alleged its policies covering other vehicles owned by John Kutz did not provide coverage for the accident at issue here.

¶ 5 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 6 We first address summary judgment in favor of State Farm. The Kutzes disputed two material facts out of State Farm's list of 20 undisputed facts: 7) State Farm mailed the Kutzes a balance due notice April 30, 2004; and 11) State Farm mailed the Kutzes a cancellation notice August 26, 2004. The Kutzes admit they did not pay the full premium. June Kutz testified she did not pay because she did not receive a reminder notice to pay the second half of the premium, and that she did not receive a cancellation notice. The Kutzes testified they had not experienced problems with mail delivery and their address had not changed. June Kutz testified she relied on State Farm to send a reminder that the second premium payment was due. State Farm was required to follow the terms of the policy in cancelling

it. *Midwestern Ins. Co. v. Cathey*, 1953 OK 169, 262 P.2d 434, 436.[4]

¶ 7 The policy insuring the vehicle includes the following cancellation provision (emphasis in original):

Conditions

* * *

4. Cancellation

* * *

**How and When We May Cancel.** We may cancel *your* policy by written notice, mailed or delivered to *your* last known address. The notice shall give the date cancellation is effective. It will be mailed or delivered to *you* at least 10 days before the cancellation effective date. The mailing of it shall be sufficient proof of notice.

Unless we mail or deliver a notice of cancellation to *you* within 45 days of taking *your* application, we will not cancel *your* policy before the end of the current policy period unless:

a. *you* fail to pay the premium when due; or

* * *

¶ 8 The Kutzes agree that the policy requires State Farm only to mail the cancellation notice, and not to insure that it is received. The Kutzes contend the record shows a dispute of the material question of whether State Farm mailed the cancellation notice to them or to the vehicle's lien holder.[5] The Kutzes assert State Farm's evidentiary materials show at most that State Farm prepared the notice for mailing.

¶ 9 The record includes the affidavit of Monica Taylor, Underwriting Team Manager for State Farm, who averred that State Farm prepared a renewal notice for the poli-

---

4. In *Cathey*, the court quoted with approval *Gendron v. Calvert Fire Ins. Co.*, 47 N.M. 348, 143 P.2d 462, 464, 149 A.L.R. 1310 (1943), which held:

Under the terms of the policy it is not necessary that the insured actually receive notice. So, it must be said that mailing is all that is required. Whether such notice be actually received by the insured is unimportant. Where the insurer has strictly complied with the terms of the policy with reference thereto, failure to receive notice will not render the attempted cancellation ineffective.

(Citations omitted).

5. Nothing in the policy language requires notice of cancellation be mailed to the lien holder. Nevertheless, State Farm attached evidence that its practice is to send a Notice of Termination of a Third Party's Interest to the lien holder 40 days after the date of a cancellation for non-payment of premium, and that such a notice was prepared in this case October 20, 2004 to be sent to Ford Motor Credit.

cy April 20, 2004.[6] Taylor further averred that on April 30, 2004, State Farm prepared a balance due notice showing that the balance of $628.28 was due August 8, 2004. Taylor asserted the balance due notice was prepared in State Farm's Insurance Service Center, in Phoenix, Arizona. Taylor averred that it is State Farm's "regular practice and procedure to prepare balance due notices for mailing on the same date the balance due notice itself is prepared. State Farm's regular practice and procedure is to submit those notices to the post office for mailing immediately after they are prepared." The renewal notice and balance due notice were attached to Taylor's affidavit.

¶ 10 Taylor further asserted State Farm's ISC office in Phoenix prepared a Cancellation Notice for the policy August 25, 2004. The notice was addressed to June Kutz, and provided that the policy would be canceled September 9, 2004 unless the premium balance was received by that date. Taylor averred that the Cancellation Notice "was prepared for mailing on August 26, 2004. It is State Farm's regular practice and procedure to videotape all notices for cancellation of non-payment of premium at its ISC facility as the notices are run through State Farm's automated mailing equipment. Still pictures taken from State Farm's videotape of August 26, 2004 show that the cancellation notice sent to June Kutz ... was prepared for mailing on August 26, 2004." Taylor lastly averred that it was State Farm's regular practice and procedure "to submit the prepared Cancellation Notices to the post office for mailing directly after the envelopes containing Cancellation Notices are photographed. State Farm does not deviate from this regular practice and procedure of preparing and submitting for mailing Cancellation Notices on the date reflected on those notices." The cancellation notice and photographs of an envelope with the Kutzes' address were attached to Taylor's affidavit.

¶ 11 The Kutzes argue that Taylor's affidavit fails to aver that the cancellation notice was actually placed in the mail. They assert that if State Farm's evidence is sufficient to

establish that it mailed the notice, then they have no claim for bad faith against State Farm. The Kutzes rely on an unpublished decision of the Tenth Circuit Court of Appeals which affirmed a lower court finding that mailing the notice of cancellation, rather that actual receipt of the notice is all that is required for cancellation for non-payment to be effective. See *State Farm Fire & Casualty Co. v. Van Horn,* 139 F.3d 912, 1998 WL 58187 (10th Cir.1998). In *Van Horn,* the circuit court cited *Cathey, supra,* for its holding that strict compliance with the policy's cancellation terms is all that is required of an insurance company, and after such compliance, the risk of non-receipt falls on the insured. Although it would appear the holding of *Van Horn* supports the trial court's decision here, the Kutzes have seized on the circuit court's description of the proof of mailing to argue that the proof in this case was lacking. In *Van Horn,* the court explained the insurer's evidence of mailing:

> In support of its claim that the cancellation notice was mailed to defendants at the address listed on the policy in strict compliance with the policy terms, plaintiff presented the statement of its employee, Tim Elliott, who testified that on December 27, 1995, he followed the customary procedures in mailing a cancellation notice to defendants whereby he checked the address, verified the postmark date, and presented the notice to a United States Postal Service official. See Appellants' App. at 318–26. We are not persuaded by defendants' argument that Mr. Elliott did not establish mailing because he could not remember mailing the specific cancellation notice to defendants. He testified that he never varied his routine of mailing cancellation notices, see *id.* at 324, and his initials appear on the plaintiff's copy of the cancellation notice, indicating that he mailed it, see *id.* at 329–30.

The Kutzes assert that in the instant case, Taylor's office was in Tulsa rather than in the Phoenix ISC office where the notices were prepared, and that no one who actually was involved in the mailing presented an affidavit that the notices were in fact mailed.

6. The renewal notice is in the record and shows the policy term was June 9, 2004 to December 9, 2004. The notice provided the premium of $1,256.55 was due June 9, 2004, but if the insured chose to pay half that date, the remaining balance was due August 8, 2004.

¶ 12 However, in another unpublished decision, the Tenth Circuit Court of Appeals has since held that *Van Horn* did not prescribe a test for the proof required to show mailing. See *Hardison v. Balboa Insurance Co.*, 4 Fed.Appx. 663, 671 (10th Cir.2001), which explained:

> Although Hardison is correct that none of Balboa's employees testified about any steps they personally take to mail cancellation notices, that is because Balboa sends its notices by computer. Indeed, Balboa's uncontradicted and verified interrogatory answers stated that once a force placed policy is cancelled, a computer-generated letter is automatically produced and sent to the homeowner and "there is not evidence that the handling of this file was not normal and in accordance with [its] procedures."

■ ¶ 13 Taylor's affidavit is sufficient evidence that the notice was mailed: the undisputed evidence showed that the cancellation notice was prepared on August 26, 2004, the envelope was photographed going through State Farm's automated mail system, it was State Farm's regular practice and procedure to submit the notices to the post office immediately thereafter, and State Farm did not deviate from that procedure. A business's regular practice and procedure is admissible as proof of mailing.[7] State Farm presented such evidence here, and the policy plainly states that mailing of the notice is sufficient proof of notice of cancellation.

¶ 14 Because we find the undisputed evidence shows State Farm strictly complied with the cancellation provision in the policy, State Farm is entitled to judgment as a matter of law on the Kutzes' claims against it.

■ ¶ 15 We next turn to the Kutzes' appeal of the order in favor of Agent. The Kutzes claimed that Agent breached an implied contract, arising out of State Farm's advertised statements that its agents are "like a good neighbor," to notify them before their policy was canceled. The Kutzes also claimed Agent was negligent in failing to discover their policy was being canceled and failing to notify them.[8]

■ ¶ 16 "An agent has the duty to act in good faith and use reasonable care, skill and

---

7. See *United States v. Gomez*, 636 F.2d 295 (10th Cir.1981). As explained by Professor Whinery:

> The routine practice of preparing a letter and placing it in the recognized depository for mailing to prove that a letter was mailed, the giving of a sales slip with each purchase to prove no record of a sale and the practice of employees to test brakes on rental cars to prove operable brakes are all examples of evidence which has been admitted as relevant to prove that the conduct of the organization on a particular occasion was in conformity with its routine practice.

2 Okla. Prac., Okla. Evidence § 16.03 (2d ed.). The regular practice and procedures of a business may be sufficient proof of mailing.

> ... it has been recognized that, in large offices which handle a volume of mail, direct proof with respect to a particular letter is impractical. The courts have held that proof of "settled custom and usage of (the sender's) office, regularly and systematically followed in the transaction of its business" may, in such cases, suffice.

*First Nat. Bank of Independence v. Mid–Century Ins. Co.*, 559 S.W.2d 50, 52 (Mo.App.1977) (citation omitted). More recently, the New Mexico Court of Appeals has applied this rule in affirming summary judgment:

> A moving party makes a prima facie case by presenting "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." ... Circumstantial evidence is sufficient to present a prima facie case for summary judgment.... Routine organizational acts such as mailing are regularly proved by circumstantial evidence. See *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.1983) ("Placing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business."); *Simpson v. Jefferson Standard Life Ins. Co.*, 465 F.2d 1320, 1324 (6th Cir.1972) (recognizing that "proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance, is sufficient to establish proof of mailing").

*Schneider Nat., Inc. v. State, Taxation and Revenue Dept.*, 140 N.M. 561, 144 P.3d 120, 124–125 (N.M.App.2006).

8. We find Agent had no duty as a matter of law under the undisputed facts of this case. We note, however, the Kutzes' negligence claim also is barred by the limitations period because it was filed more than two years after their cause of action accrued and they have failed to show the claim relates back to the initial petition. See 12 O.S.2001 § 2015(C). The Kutzes filed their First Amended Petition January 8, 2007. They made claims against Agent for the first time in that

diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not *procured* as promised and the insured suffers a loss." *Swickey v. Silvey Co.*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d 266 (emphasis added). The Kutzes acknowledge they have found no cases affirmatively finding an agent has a duty to maintain insurance by notifying his client that the policy is being canceled for non-payment. The Kutzes have cited cases finding a duty to *procure* insurance coverage. See *Dewees v. Cedarbaum*, 1963 OK 54, 381 P.2d 830; *Swickey, supra;* and *A–OK Const., Inc. v. McEldowney, McWilliams, Deardeuff, & Journey, Inc.*, 1992 OK CIV APP 66, 844 P.2d 182 (*cert. denied*). None of these cases finds a duty on the part of an agent to notify the insured in advance of cancellation for non-payment.

¶ 17 In *Swickey*, the Oklahoma Court of Civil Appeals noted an insurance "applicant's agreement to accept a policy if issued is sufficient consideration for the contract since it carries with it the implied promise to pay whatever premium would be due thereon," citing *Schuck v. Habicht*, 672 So.2d 559, 562 (Fla.App.1996). We find no support for the Kutzes' claim that Agent had a duty to maintain their policy, and any such duty was waived when the Kutzes failed to comply with their implicit promise to pay the premium. The evidence shows Agent had no contractual agreement to notify the Kutzes, nor any duty to do so.

¶ 18 State Farm and Agent were entitled to judgment as a matter of law.

AFFIRMED.

MITCHELL, V.C.J., and BELL, J., concur.

pleading. Agent asserted the negligence claim was barred because it was filed more than two years after the date of cancellation and the date of the accident. 12 O.S.2001 § 95(3). The Kutzes claimed that when they originally informed Agent that their claim was denied, he expressed shock. But later, from State Farm's discovery responses, the Kutzes learned that

Agent receives computerized information on his clients' policies. The Kutzes claimed Agent was negligent for failing to discover from his computer reports that their policy was being cancelled and in failing to warn them. The Kutzes claimed that they did not discover Agent's alleged negligence until January 11, 2006, and that the limitation period began to run that date.